NOT DESIGNATED FOR PUBLICATION

No. 118,801

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RAYMOND E. FULLER,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed March 8, 2019. Affirmed.

*Kristen B. Patty*, of Attorney at Law, of Wichita, for appellant.

*Lance J. Gillet*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., SCHROEDER and GARDNER, JJ.


PER CURIAM: Raymond E. Fuller appeals the findings of the district court after the Kansas Supreme Court remanded this matter "with instructions to hold a new hearing based on the arguments [made] during Fuller's pro se motion for new trial hearing that have not yet been disposed of adversely to him in these K.S.A. 60-1507 proceedings." *Fuller v State*, 303 Kan. 478, 503, 363 P.3d 373 (2015). In the present appeal, Fuller contends that his trial counsel was ineffective for failing to retrieve and preserve certain phone records as well as for failing to strike a juror who had indicated that she had been

1

the victim of nonsexual assault about four years prior to Fuller's trial. Finding no error, we affirm.

FACTS

On September 6, 2007, a jury convicted Fuller of one count of rape, one count of aggravated battery, and one count of aggravated sexual battery. The district court imposed concurrent sentences of 620 months' incarceration for the rape conviction, 34 months' incarceration for the aggravated battery conviction, and 34 months' incarceration for the aggravated sexual battery conviction. Fuller filed a direct appeal and a panel of this court affirmed his convictions. *State v. Fuller*, No. 100,026, 2009 WL 4639506 (Kan. App. 2009) (unpublished opinion), *rev. denied* 290 Kan. 1098 (2010).

Fuller filed a pro se K.S.A. 60-1507 motion on May 2, 2011, and the district court appointed an attorney to represent him. Although the majority of his claims asserted in the motion were summarily denied, the district court held an evidentiary hearing on three allegations that his trial counsel was ineffective. Following the hearing, the district court issued a written opinion denying the motion. On appeal, a panel of this court affirmed the district court's decision. *Fuller v. State*, No. 108,714, 2013 WL 6164528 (Kan. App. 2013) (unpublished opinion), *rev. granted* 300 Kan. 1103 (2014). However, the Kansas Supreme Court accepted a petition for review.

On December 23, 2015, the Kansas Supreme Court issued an opinion affirming in part, reversing in part, and remanding the case to the district court. *Fuller*, 303 Kan. at 503. The Kansas Supreme Court summarized the facts of Fuller's appeal to that point accordingly:

> "The charges against Fuller were based on allegations made by his next-door neighbor, C.K., after an encounter in C.K.'s home. Fuller admitted to sexual contact with C.K., but he defended on the basis that the contact was consensual.

2

"The Court of Appeals panel summarized the conflicting trial testimony as follows:

"'Fuller and the victim, C.K., were neighbors who had sporadic contact prior to the incident which resulted in charges against Fuller. . . . [T]he day prior to the incident, C.K. helped Fuller jump-start his vehicle. . . .

. . . .

"'C.K. testified that at the time Fuller rang her doorbell, she was in her bathrobe and talking on the phone with her friend Brenon Odle. Her two children, ages 3 years and 22 months, were at home with her. C.K. told Odle to call her back in a few minutes and then stuck her head outside the door and told Fuller to "give [her] a minute." C.K. went to her bedroom to put some clothes on. Without C.K.'s permission, Fuller entered the house and walked into her bedroom doorway and told C.K., "I like what I'm looking at." Startled and caught off-guard, C.K. asked Fuller to give her "just a minute" and directed him to wait in the living room. Fuller complied.

"'C.K. finished dressing and went to the living room, where she seated herself f[a]rthest from Fuller on the couch. C.K.'s children were also with them in the living room. Fuller told C.K. that he had some photographs on his cell phone that he wanted to show her. C.K. leaned across the couch and saw that the photographs were of Fuller's penis. As she leaned over, Fuller grabbed C.K.'s hair and pulled her head toward[ ] his lap. He then pulled C.K.'s shirt down, exposing her chest, and grabbed her breast. After removing his hand from her chest, Fuller put his hand inside C.K.'s shorts and placed his fingers inside her vagina.

"'The encounter ended when the phone rang and C.K. answered it. Although it was Odle calling her back, C.K. told Fuller that her husband was on the phone, and that her husband knew Fuller was there and Fuller should "get the hell out of here." Fuller left, but only after telling C.K. that he would kill her if she told anyone what happened. C.K. then told Odle what had happened.

. . . .

3

"'Fuller testified that after he rang the doorbell, C.K. smiled and invited him in, and the two made "small talk" as they walked to C.K.'s bedroom. Once in the bedroom, C.K. dropped her bathrobe and exposed herself to Fuller. Fuller retreated to the couch because the presence of C.K.'s children in the bedroom made him feel "weird." C.K. joined him on the couch and[,] after they talked briefly, C.K. exposed her vagina to him. Fuller admitted he placed his finger in C.K.'s vagina, but testified that C.K. smiled after he did so. Fuller then began performing oral sex on C.K. but stopped because the children were nearby. C.K. told Fuller she liked having her hair pulled, so Fuller playfully pulled her hair. Fuller agreed that the encounter ended when C.K.'s phone rang.' *State v. Fuller*, No. 100,026, 2009 WL 4639506, at *1-2 (Kan. App. 2009) (unpublished opinion).

"After Fuller's jury convicted him as charged, his lawyer, Quentin Pittman, filed a motion for new trial and a motion for judgment of acquittal, both attacking the sufficiency of the evidence. Fuller also filed a pro se motion, which the district judge construed as a motion for new trial, in which Fuller raised issues related to members of his jury. At the hearing on the motions, Pittman described the trial as 'extremely clean.' The district judge ruled that sufficient evidence supported the convictions and denied the two motions Pittman had filed.

"The district judge then turned to Fuller's motion. Pittman suggested that Fuller should argue his motion because 'we kind of get into a mine field.' Fuller's oral statement included issues beyond those in his written motion. He argued that his jury was not impartial, that the State had violated an order in limine, and that Pittman had failed to put on evidence in Fuller's defense. When the judge asked Pittman if he had anything to add to Fuller's argument, Pittman said that he had 'a slightly different take on those issues.' Pittman then defended his decisions about the evidence to put on at trial as strategic calls properly within the province of defense counsel. Pittman also defended his juror selections as strategic decisions and said he thought Fuller might 'be mistaken in his recollection of several things.'

"Characterizing Fuller's arguments as allegations of ineffective assistance of counsel, the district judge concluded that—'for the reasons expressed by Mr. Pittman'— the challenged decisions qualified as trial strategy and did not support a finding of ineffective assistance of counsel.

4

"On direct appeal before the Court of Appeals, Fuller asserted that 'his trial counsel was so grossly ineffective that he entirely failed to subject the prosecution's case to meaningful adversarial testing,' *Fuller*, 2009 WL 4639506, at *1, supporting this assertion with specific arguments different from those he raised before the district court. In particular, Fuller attacked Pittman's tone during Fuller's direct examination at trial and Pittman's failure to advocate for Fuller at his motion for new trial hearing. 2009 WL 4639506, at *5. A panel of the Court of Appeals declined to address the allegations because the record on appeal was not sufficiently developed, but it noted that 'some of Fuller's allegations, viewed from a cold record, are troubling.' 2009 WL 4639506, at *5. The panel said that Fuller could challenge Pittman's effectiveness through a later motion under K.S.A. 60-1507.

"As contemplated by the panel, Fuller filed a K.S.A. 60-1507 motion. In it he argued that Pittman had been ineffective: (1) by the way he conducted his direct examination of Fuller, (2) by failing to object to a jury instruction, (3) by failing to request a lesser included offense instruction, (4) by failing to argue in support of Pittman's motion for new trial, (5) by arguing against Fuller's pro se motion for new trial, (6) by failing to object to the prosecutor's cross-examination of Fuller, (7) by failing to strike two jurors, (8) by failing to discredit C.K., and (9) by failing to subpoena a witness who could have testified about C.K.'s flirtatious nature.

"The district judge held a preliminary, nonevidentiary hearing on the motion. At the hearing, counsel for Fuller argued the motion and requested a full evidentiary hearing on the issues raised. The district judge denied relief on all but three of Fuller's allegations. The district judge ordered an evidentiary hearing on the claims that (1) Pittman was ineffective in his direct examination; (2) Pittman was ineffective in his advocacy at the motion for new trial hearing; and (3) Pittman was ineffective for failing to challenge two jurors.

"At the evidentiary hearing, counsel for Fuller questioned Pittman about his use of cross-examination-style questions during Fuller's direct examination. Fuller had argued in his motion and had testified at the 1507 hearing that Pittman's 'unorthodox' questions left Fuller confused, insinuated that he was guilty, destroyed his credibility, and were contrary to Fuller's theory of defense, *i.e.*, that the sexual contact was consensual.

5

Pittman testified that he had provided Fuller with a list of questions to review before Fuller testified and that the style of the questions was not reflected on the list. Pittman also conceded that he had not specifically prepared Fuller for the tone of the questions asked. When counsel for Fuller read questions from the trial transcript, Pittman agreed that he had asked the questions that were read.

"Those questions included: 'You are going over because you were going to have sex with her one way or the other, correct?'; 'That's when you grab her?'; 'That's when you say I want to fuck you?'; 'Then you attack her?'; 'That's when you grab her and attack her, right?'; 'That's when you attack her?'; 'That's when you jammed your finger into her vagina?'; 'That's when you rip her shorts off?'; '[Y]ou then attack her, pull her hair and put your finger in her vaginal area, right?'; 'You grab her by the back of the head and stick it towards your crotch?'; 'That's when you said you tell anyone and I will fucking kill you?'; 'Because you didn't tell the exact same story throughout that you eventually got to, you are a liar right?'; 'I mean you raped her[?]' Pittman concluded his redirect examination with 'And that's because you are a liar and rapist?'

"Pittman testified that he asked these questions in order to 'take away the sting of the accusation.' He also said that he believed it was important for Fuller to appear credible, and, in an effort to achieve that aim, Pittman wanted Fuller to come across as 'indignant, emotional.' This reaction would have contrasted, Pittman said, with the appearance of C.K.'s testimony, which Pittman described as 'blasé and not emotional.' Pittman further testified that he wanted to 'get out in front of the issue and do it in a controlled manner.' Had Fuller not handled the questioning as Pittman intended, Pittman explained, he would have stopped using the tactic. Pittman also testified that, in his view, Fuller had done well on the stand and had connected with the jury.

"Turning to Pittman's performance at the motion for new trial hearing, Pittman described the hearing as 'contentious,' but he did not specifically remember arguing Fuller's pro se motion.

"Fuller's third claim subject to the district court evidentiary hearing—that Pittman was ineffective for failing to strike two jurors—was not appealed and does not warrant our discussion.

6

"In an order dated May 17, 2012, and filed June 8, 2012, the district judge denied Fuller relief. The district judge concluded that Pittman's performance was reasonable and that the decision to use cross-examination-style questions was strategic. The district judge noted that 'the technique worked (as demonstrated by trial counsel's continued use of it and [Fuller's] ability to answer the questions).' According to the district judge, the questioning softened the impact of the prosecutor's cross-examination and elicited 'passionate denials' from Fuller.

"As for Pittman's performance at the motion for new trial hearing, the district judge recognized Pittman's candor and ruled that his performance was reasonable. The district judge explained that Pittman had 'truthfully explained what had occurred and why he did what he did.' The district judge also concluded that Fuller was unable to show prejudice because there was no factual or legal merit to the issues he raised. The district judge did not discuss any alleged conflict of interest.

"Fuller filed a notice of appeal from 'the judgment entered May 17, 2012, and filed with the Court on June 08, 2012, denying his [motion] for relief under K.S.A. 60-1507.' In his brief to the Court of Appeals, he identified three appellate challenges: (1) Pittman was ineffective on direct examination; (2) Fuller was denied conflict-free representation at his motion for new trial hearing; and (3) Pittman was ineffective for failing to call a witness who would have testified about the victim 'being a flirt and a tease.'

"A panel of our Court of Appeals affirmed. The panel agreed with the district judge's characterization of Pittman's style of questioning on direct examination as a reasonable strategy, given Fuller's consent defense.

"'Fuller's decision to take the stand and paint a picture of consensual sexual activity would have clearly opened him up to the same questioning by the prosecutor on cross-examination. We do not find it unreasonable strategy to try and soften the effect of Fuller's testimony while in the control of his own attorney, who testified he would have immediately stopped if he felt the aggressive questioning was not working and caused Fuller to become upset or flustered. The prosecutor would not have stopped.' *Fuller v. State*, No. 108,714, 2013 WL 6164528, at *6 (Kan. App. 2013) (unpublished opinion).

7

"On the issue of conflict-free counsel, the panel held that Pittman never gave up his role as Fuller's advocate at the motion for new trial hearing. The panel also ultimately concluded that Fuller was unable to show prejudice, notwithstanding its recognition that, as Fuller's trial counsel, 'Pittman was obligated to advocate and prove his own professional ineffectiveness by addressing the claims for a new trial.' 2013 WL 6164528, at *8.

"Finally, the panel held that Fuller's claim of ineffectiveness based on Pittman's failure to call a witness to discredit C.K. was not properly before the court. The district judge had decided the issue against Fuller in the order dealing with the issues for which there was no evidentiary hearing, and Fuller's notice of appeal did not identify that order. In the alternative, assuming appellate jurisdiction to be sufficient, the panel concluded that Pittman's decision not to call the witness 'was clearly a tactical decision and even if erroneous would not have changed the outcome of the trial.' 2013 WL 6164528, at *13.

"Fuller petitioned this court for review, raising the same three claims of ineffective assistance of counsel that he raised before the Court of Appeals." *Fuller*, 303 Kan. at 480-85.

Although the Kansas Supreme Court affirmed two of the three issues presented, it remanded the case to the district court for the limited purpose of "hold[ing] a new hearing based on the arguments before the district court during Fuller's pro se motion for new trial hearing that have not yet been disposed of adversely to him in these K.S.A. 60-1507 proceedings." 303 Kan. at 503.

The district court held a hearing on December 29, 2016. Fuller waived his right to be personally present at the hearing but appeared by telephone. He was also represented at the hearing by counsel. Fuller testified in support of his claims for relief. During his testimony, Fuller noted that his trial counsel had consulted with him about a potential juror that had been previously assaulted and told him that they "[c]ould get somebody worse." He also testified that he wanted to see the victim's phone records because he

believed they would confirm that she was on the phone multiple times during the alleged attack.

In addition, Fuller's trial counsel testified at the remand hearing regarding his recollections of the criminal case. Counsel testified that although he could not recall all the details since nine years had elapsed since the trial, he was able to recall that his objective "was to try and strike the people that we thought were the worst out of the panel." He testified that he discussed the jury's composition with Fuller during voir dire and that his strategic decision regarding the use of his peremptory challenges were "made in relation to the entire panel."

On cross-examination, trial counsel explained the difficulties he faced in trying to effectively defend Fuller:

> "It's been characterized as a he said/she said incident, but that's not really accurate, because you have to look at this—you flesh it out, if you will. And what I mean by that is that we were incredibly behind the eight ball to start this case because Mr. Fuller . . . [is] physically deformed from the waist down. We have that individual, my client. We have the alleged victim, who is a—I'm guessing mid-30's at the time—I'm not sure—tall, fit, attractive woman who is married to an ex-football player; kind of this blond Adonis. He testified at trial. And so our story, if you will, is that this woman chose to have sex with us, my client, for whatever reason. And so, you know, there are he said/she said stories where it's equal. This was not equal. This is not an equal 'he said.' And you can't appreciate that if you haven't seen these people in person."

Trial counsel also testified that he did not obtain or introduce phone records into evidence because he believed that doing so would have damaged Fuller's credibility. He called it a "strategic decision" and indicated that he "purposely" did not pursue those records. In particular, counsel was concerned about Fuller's changing story. He explained:

"Getting several versions of events that occurred is problematic, and my concern was that, for instance, if I had gotten my client's phone records—and while I get those records, I don't have to turn them over to the prosecution unless I use them. My concern, then anyway—now I would, but my concern at the time was, you know, this wasn't my first rape case with Marc Bennett, so I know how this works. What Mr. Bennett liked to do was, you know, he would have gone and gotten those records himself because he would have seen we had filed a subpoena. And so my concern was this. Our credibility was on life support to start because of all the situations. And so one of the versions I got was I only went over there because she called and invited me over. Something to the effect of a statement of, you know, I jumped you yesterday, why don't you come jump me today. And so—but, again, that was disavowed on different occasions, and we kind of had a fluid back and forth of the three versions that we had. So my concern was if at trial we presented that version, that's what the testimony was, and Marc Bennett gets up and says, so you had this conversation with her? Oh, yeah. Can you show me in the records where that occurred? We were done. It just wouldn't happen. They wouldn't listen to anything else we said.

Counsel further explained:

"The phone records of either [Fuller or the victim] wouldn't have mattered because we had an individual who we knew was on the phone with her several times. He testified to that. I didn't have any reason to dispute that.

"There also was the . . . police interviews with the two children [who] were present and so—who didn't testify at the trial, thankfully. Yeah, I just saw that as an incredible risk, because if there's a phone call, it's not like a text. You know, we don't get a text where it says, you know, thanks for sex; don't tell my husband. We'd get proof there was a phone call. And the problem I always had was whether there was a phone call or not doesn't speak to whether there was consent or not. It doesn't turn on, you know, if there was a phone call—or even if she had a phone call and invited him over. We still are not at consent. You know, that's a separate issue. We're at an issue of perhaps we can make some ground with impeachment, perhaps. But that wasn't worth the risk knowing what I knew about everything I had learned from my client."

The district court took the issues under advisement and both parties submitted proposed findings of fact and conclusions of law following the hearing. Ultimately, the district court issued a seven-page journal entry denying Fuller's claims for relief. In doing so, the district court first reviewed the law relating to requests for new trials and claims of ineffective assistance of counsel. The district court then turned to an examination of the facts as presented at the evidentiary hearing.

Concerning the telephone records, the district court found:

"[Fuller]'s trial counsel . . . explained that he did not subpoena the records because he was not convinced that such records would be of any meaningful use to the defense of the case. [Trial counsel] stated that [Fuller]'s version of the events involving CK had changed. Consequently, [trial counsel] was concerned that any records subpoena he filed would tip off the prosecutor, and that the prosecutor would then seek the same records with his own subpoena. If the records turned out to be damaging to the defense, such records would now be in the hands of the prosecutor."

The district court noted that trial counsel "had to make a decision whether to seek such records in light of the risk" that the State would obtain the same records. Likewise, the district court recognized that trial counsel "had no faith that the telephone records would establish what [Fuller] claimed they would because" his client had continually changed his story. The district court indicated that trial counsel "calculated that the risk of damage to [Fuller]'s case outweighed any benefit that the telephone records might have added to the defense if the telephone records established what [Fuller] claimed they would." Accordingly, the district court concluded that trial counsel's decision to not pursue the phone records was reasonable.

In addition, the district court highlighted the fact that at the evidentiary hearing, Fuller never established that the phone records even existed or were available at the time of his trial. Continuing, the district court noted that "the telephone records at issue are no

11

longer available." As such, as the district court pointed out, even if Fuller received a new trial, the phone records could not be introduced into evidence.

Turning to the issue of trial counsel's failure to strike a juror from the panel who had been the victim of a nonsexual assault, the district court noted that the calculation regarding how to use preemptory challenges is often complex. The district court pointed out that the decision requires more than simply choosing to have "a juror with no baggage on the jury; it's a matter of sorting through multiple jurors that may have negative life experiences and not being able to strike them all." The district court also found that Fuller "did not prove, and cannot prove, that had [she] been struck that she would have been replaced by another juror that had less negative baggage or would have been more sympathetic to [Fuller]'s case." Further, the district court concluded that Fuller did "not carr[y] his burden of proving that the outcome of the case would have been different had the assault-victim juror not served on the panel."

## ANALYSIS

*Issues Presented and Standard of Review*

On appeal, Fuller raises two issues. First, whether his trial counsel was ineffective by failing to collect and preserve the victim's phone records as evidence. Second, whether his trial counsel was ineffective because he did not strike a female juror who had previously been a victim of an assault.

The right to counsel in criminal cases is provided by the Sixth Amendment to the United States Constitution:

> "'The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right to counsel is applicable to state proceedings under

12

the Fourteenth Amendment. *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014). This guarantee includes the right to more than the mere presence of counsel[. It] also [includes] the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267, 104 S. Ct. 3562, 82 L. Ed. 2d 864 (1984); see also *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting *Strickland*). We have acknowledged that "[t]he purpose of the effective assistance guarantee 'is simply to ensure that criminal defendants receive a fair trial.'"' *State v. Galaviz*, 296 Kan. 168, 174, 291 P.3d 62 (2012) (quoting *Strickland*, 466 U.S. at 689." *Fuller*, 303 Kan. at 486.

Similarly, the Kansas Bill of Rights § 10 and K.S.A. 22-4503 enshrine the right to effective counsel. *State v. Lawson*, 296 Kan. 1084, 1093, 297 P.3d 1164 (2013); Kan. Const. Bill of Rights, § 10.

Here, the district court held an evidentiary hearing on the issues remanded by the Kansas Supreme Court. Accordingly, we review the district court's factual findings to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. In turn, our review of the district court's ultimate conclusions of law is de novo. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013). Likewise, we review claims of ineffective assistance of counsel under the same standards. *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018).

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of trial counsel was deficient under the totality of the circumstances, and (2) that the movant suffered prejudice—in other words, that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]). The burden to establish ineffective assistance of counsel is on the movant. *Fuller*, 303 Kan. at 486; *State v. Jackson*, 255 Kan. 455, 463, 874 P.2d 1138 (1994).

13

*Preservation of Telephone Records*

Fuller contends that trial counsel was ineffective "by failing to adequately investigate the victim's phone records, as well as by failing to collect and preserve those records as evidence of any ineffective assistance of counsel claims [he] might have had against him." He argues that his trial counsel should have gotten the victim's phone records "because she was on the phone . . . multiple times during the time frame that she said that all this was taking place. . . ." However, Fuller does not remember if the victim was on a land line or a cell phone. He claims "that the records were important because his trial came down to the credibility of himself and [the victim], with him saying that their sexual encounter was consensual, and her saying that it was against her will."

With little explanation or analysis, Fuller suggests:

> "[Trial counsel]'s representation fell below an objective standard of reasonableness and was deficient, resulting in prejudice to Fuller. Fuller established both prongs of *Strickland*, the district court must be reversed, and Fuller must receive a new trial."

Judicial scrutiny of an attorney's performance is highly deferential and requires consideration of the totality of the circumstances. We must start from the premise that an attorney's conduct falls within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). If counsel has made a strategic decision after consideration of the realistically available options, then his or her decision is virtually unchallengeable. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013) (citing *Strickland*, 466 U.S. at 690-91).

As indicated above, even if an attorney's performance is deficient in some way, the movant must also establish prejudice. *Sola-Morales*, 300 Kan. at 882. To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a

reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

Based on our review of the record, we do not find trial counsel's performance to be deficient. At the evidentiary hearing, trial counsel explained his strategic decision not to pursue the telephone records and this testimony was believed by the district court. Unfortunately, he was faced with a client who changed his story on several occasions and with a consent defense that was questionable at best.

We also glean from the record that trial counsel is an experienced criminal attorney who was familiar with how the prosecutor pursued his cases. According to trial counsel, the prosecutor was known to check for subpoena requests and would likely have requested the phone records on behalf of the State. Trial counsel explained that he weighed the risk, and he concluded that discovering potentially damaging evidence outweighed any potential benefit that might be derived from the phone records.

Trial counsel also testified that he discussed the matter with Fuller prior to making his decision not to pursue the records. Even though trial counsel did not know with certainty what information the telephone records actually contained, the rationale he gave during his testimony at the hearing—which was found to be credible by the district court—was a reasonable exercise of professional judgment. Accordingly, we conclude that Fuller has failed to meet the first requirement under *Strickland*. See 466 U.S. at 687; see also *Sola-Morales*, 300 Kan. at 882.

Even if we found trial counsel to have been deficient relating to the investigation and preservation of the telephone records, we do not find that Fuller has established prejudice. Significantly, trial counsel reasonably believed that the phone records would have little—if any—bearing on Fuller's defense. In particular, trial counsel testified that unlike text messages that potentially could contain exculpatory evidence, "whether there

15

was a phone call or not doesn't speak to whether there was consent or not." Thus, Fuller cannot show that he has suffered prejudice and has failed to meet the first requirement under *Strickland*. See 466 U.S. at 687; see also *Sola-Morales*, 300 Kan. at 882.

We note that Fuller briefly attempts to include a new argument on appeal. He suggests that his trial counsel "compounded any failure to adequately investigate . . . by failing in his ethical obligations to collect, record, and preserve evidence of any ineffective assistance of counsel. . . ." We do not find this argument to be properly before us. This question considers the action or inaction of counsel *after* the trial and was not raised in Fuller's K.S.A. 60-1507 motion nor was it presented at the hearing on remand. Issues not raised before the district court cannot be raised on appeal. *Kelly*, 298 Kan. at 971.

*Failure to Strike Juror*

Fuller also contends that his trial counsel was ineffective "by failing to challenge for cause or to remove with a peremptory challenge a juror who personally was the victim of a crime similar to [the] one [he] faced at trial . . . ." In support of this contention, Fuller argues:

> "Numerous courts have found deficient performance and presumed prejudice where counsel failed to challenge for cause or to remove with peremptory challenges jurors who personally or vicariously were victims of crimes similar to those on trial. . . . [Trial counsel]'s representation fell below an objective standard of reasonableness and was deficient, resulting in prejudice to Fuller. Fuller established both prongs of *Strickland*, the district court must be reversed, and Fuller must receive a new trial." [Citations omitted.]

Although Fuller cites five cases from other jurisdictions that he claims are similar to this case, he does not explain the facts or holdings in any of the cases. Likewise, he

16

does not attempt to show how these cases might apply to the situation presented in this case. Instead, Fuller simply makes the conclusory statement that trial counsel's "representation fell below an objective standard of reasonableness and was deficient, resulting in prejudice to [him]." Because points raised only incidentally in a brief but not argued therein are deemed abandoned, this claim fails. See *Sprague,* 303 Kan. at 425.

Nevertheless, even if he had appropriately briefed this issue, we do not find that Fuller has established either prong of the *Strickland* test. Moreover, we find the cases cited by Fuller to be distinguishable from the present case. See *Virgil v. Dretke*, 446 F.3d 598, 609 (5th Cir. 2006) (Counsel was ineffective for failing to strike two jurors who made "express statements . . . conceding bias against" the defendant.); *Titel v. State*, 981 So. 2d 656, 659 (Fla. Dist. Ct. App. 2008) (Counsel was ineffective for not inquiring into a juror's ability to serve after he not only stated he could not be impartial, but also stated that he actively advocated for the execution of rapists.); *Kirkland v. State*, 274 Ga. 778, 779, 560 S.E.2d 6 (2002) (disapproved by *Willis v. State*, 304 Ga. 686, 706 n.3, 820 S.E.2d 640 (2018); *State v. Garza*, 143 S.W.3d 144, 151 (Tex. Ct. App. 2004) (Counsel was ineffective in an aggravated sexual assault case for not striking a juror who stated he could not be fair and impartial due to the nature of the charge.); *State v. Carter*, 250 Wis. 2d 851, 855, 860, 641 N.W.2d 517 (2002) (Counsel was ineffective for failing to strike a juror who stated that his brother-in-law was the victim of sexual assault and that this experience "would influence . . . [his] ability to be fair and impartial in this case[.]").

Here, the juror in question indicated that she had been "assaulted about four years ago" and that the encounter "was not sexual of any nature." As such, the assault suffered by the juror was quite different from the facts of this case. Moreover, the juror did not indicate that her past experience would prevent her from being fair and impartial. In fact, she stated that she would "be fair to both sides . . . ." So, there was no reason to dismiss this juror for cause. Moreover, as the district court explained in ruling on this issue, Fuller's attorney had a limited number of peremptory challenges to use and had to make a

17

strategic decision regarding how best to use them. The district court further explained that the decision requires more than simply choosing to have "a juror with no baggage on the jury; it's a matter of sorting through multiple jurors that may have negative life experiences and not being able to strike them all."

Likewise, the district court found that Fuller "did not prove, and cannot prove, that had [the juror] been struck that she would have been replaced by another juror that had less negative baggage or would have been more sympathetic to [Fuller]'s case." Accordingly, the district court concluded that Fuller did "not carr[y] his burden of proving that the outcome of the case would have been different had the assault-victim juror not served on the panel." We agree that Fuller did not carry his burden under *Strickland*. He has failed to establish how his trial counsel's strategic decisions regarding whom to strike from the jury fell below an objective standard of reasonableness or that he was prejudiced by the failure to strike the juror in question.

Affirmed.