COURT OF APPEALS
DECISION
DATED AND FILED

January 2, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2403-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2021CF2071

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JOSUE IVAN FERNANDEZ-ACHECAR,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Brown County: THOMAS J. WALSH, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Josue Ivan Fernandez-Achecar appeals from a judgment convicting him of multiple felonies and from an order denying his

motion for postconviction relief. Fernandez-Achecar argues that his trial attorney was constitutionally ineffective by failing to seek the removal of two prospective jurors whom Fernandez-Achecar claims were biased. We reject Fernandez-Achecar's arguments and affirm.

**BACKGROUND**

¶2 The State charged Fernandez-Achecar with five counts: repeated sexual assault of a child, kidnapping, felony intimidation of a victim, strangulation and suffocation, and physical abuse of a child (intentionally causing bodily harm). Fernandez-Achecar entered not-guilty pleas to all of the charges, and the case proceeded to a jury trial.

¶3 During voir dire, Fernandez-Achecar's trial attorney told the prospective jurors that Fernandez-Achecar was innocent, but that he might choose not to testify. Defense counsel then asked whether all of the potential jurors "could reach [a] verdict of not guilty without [Fernandez-Achecar] getting up there on the witness stand and saying he didn't do it." One prospective juror, who ultimately did not serve on the jury, responded, "I don't know that I could do that." He further explained, "[I]f they don't get on the stand, I think they're guilty." Defense counsel then asked whether any of the other potential jurors agreed with that opinion. Several members of the jury pool, including C.S. and P.M., raised their hands.

¶4 Defense counsel subsequently asked C.S. follow-up questions about this topic, asking him to "[e]xpand on" why he had raised his hand. C.S. responded that "every situation has nuances," but that he did not think the evidence would explain everything "without [the defendant's] point of view of what actually happened." C.S. stated that it would not be "[i]mpossible" for him

to reach a not-guilty verdict without hearing the defendant's testimony, but "it would make it more difficult." When asked why a defendant might not want to testify, C.S. responded that a person might not take the stand because they might worry about "slip[ping] up [and saying] something that they didn't want to say or perhaps mak[ing] a mistake in what they were saying." C.S. subsequently stated, though, that he was "not a lawyer," so he did not know other reasons why a person might choose not to testify. C.S. agreed, however, that it would be "scary" to testify in court.

¶5 Defense counsel then asked what C.S. would do if the defendant did not testify and, during deliberations, another juror said, "[H]e didn't take the stand, I've got no choice but to find him guilty." C.S. responded that he would "probably say hold on, let's look at the full picture before we, you know, just slap that label on him." However, C.S. stated that he would "probably" take the defendant's decision not to testify into consideration.

¶6 Defense counsel then spoke with six other prospective jurors about how a defendant's decision not to testify would affect their decision, but he did not specifically question P.M. about that topic. Eventually, one of the prospective jurors stated, "Well, I can't—if he's telling the truth or lying, if he doesn't speak it and if the case is super weak, it may not—why risk it? He can't lie if he doesn't speak." Defense counsel then asked, "Does anyone agree with that? Does anyone disagree with that? I'm not seeing hands on either questions [sic]." Counsel then moved on to a different line of questioning.

¶7 Although defense counsel did not specifically question P.M. about her opinions regarding a defendant's decision not to testify, P.M. spoke up about several other topics during voir dire. For instance, she volunteered that she shares

a maiden name with a staff member at defense counsel's law firm, which she stated would not impact her ability to serve as a juror. P.M. also disclosed that she had served as a juror about twenty years earlier in a civil case, and she stated that nothing about that experience would make it difficult for her to serve fairly in this case.

¶8 Later, P.M. stated that she was "very upset" by the judge's reading of the charges because she was a mother and a great-grandmother. At another point, when defense counsel asked the prospective jurors whether there was a way to protect oneself from being accused of sexual assault of a child, P.M. responded that it was not "realistic" to wear a camera twenty-four hours a day to prevent such an accusation. Finally, P.M. stated she should not be selected for the jury because "some of the sentences that they have for certain crimes are very, very harsh compared to what I believe should happen, so I would think I should be dismissed."

¶9 C.S. and P.M. each served on the jury. Fernandez-Achecar chose not to testify. The circuit court instructed the jury that "[a] defendant in a criminal case has the absolute constitutional right not to testify. The defendant's decision not to testify must not be considered by you in any way and must not influence your verdict in any manner." The jury found Fernandez-Achecar guilty on all counts. The court sentenced Fernandez-Achecar to a total of twenty-two years' initial confinement followed by fifteen years' extended supervision.

¶10 Fernandez-Achecar moved for postconviction relief, arguing that his trial attorney was constitutionally ineffective by failing to remove C.S. and P.M. from the jury, either for cause or by using peremptory strikes. Fernandez-Achecar emphasized that the constitution "guarantees a defendant the right not to testify at

trial, and the right to an unbiased jury." He argued that C.S.'s and P.M.'s responses during voir dire showed that they were biased against him because he did not testify at trial and that there was no "reasonable strategic reason to not have [C.S. and P.M.] removed based upon their belief" that a defendant's decision not to testify is indicative of his or her guilt.

¶11 At a *Machner*[1] hearing, Fernandez-Achecar's trial attorney testified that he did not recall why he did not seek to have C.S. or P.M. removed from the jury pool. He also testified that he had no recollection as to the reasoning behind his use of his peremptory strikes. Trial counsel explained that he asked C.S. whether he believed it would be scary for a defendant to testify in order to "educate [the potential jurors] as to why someone may choose not to testify even though they are innocent or they have a story to share with the jury." According to trial counsel, C.S.'s responses to that line of questioning "support[ed] the information" that counsel was attempting to convey to the potential jurors regarding that topic.

¶12 The circuit court denied Fernandez-Achecar's postconviction motion in an oral ruling. The court discussed C.S.'s and P.M's voir dire responses in detail. The court found that P.M.'s responses showed that she was "trying to be realistic, trying to be fair-minded" and that "[s]he was a genuine and honest responder to voir dire questions."

¶13 With respect to C.S., the circuit court found that his answers were "a direct indication of a sense of fair play," in that C.S. "want[ed] to hear both sides."

---

[1] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

5

The court also cited C.S.'s statement that he was not a lawyer, which "[brought] to [the] [c]ourt's mind the notion that some pieces of this trial hadn't been presented to these jurors before they were asked these questions, and they were going to get those later." On the whole, the court found that C.S.'s responses showed that C.S. "wasn't going to allow somebody to be found guilty just simply because they failed to testify. He wanted to analyze things. He wanted to look over everything."

¶14 Ultimately, the circuit court found that neither C.S. nor P.M. "expressed an irrational or unshakeable bias that indicated an inability or unwillingness to faithfully and impartially carry out the law or apply the law." The court also noted that when it instructed the jury, it expressly stated that "a defendant in a criminal case has the absolute constitutional right not to testify" and that "[t]he defendant's decision not to testify … must not be considered by you in any way and must not influence your verdict in any manner." The court stated there was "nothing about these two jurors that would suggest to me that they're anything other than desiring to follow the instructions of the court and do the right thing. And there's nothing that would suggest that they were going to really ignore … the orders of the court."

¶15 Based on these findings, the circuit court concluded that Fernandez-Achecar had failed to meet either prong of the ***Strickland*** test for ineffective assistance of trial counsel. *See **Strickland v. Washington***, 466 U.S. 668, 687 (1984). The court reasoned that Fernandez-Achecar's trial attorney was not ineffective by failing to have C.S. and P.M. removed from the jury pool because neither C.S. nor P.M. was biased. The court explained:

> I'm satisfied of that from the questioning that occurred, from the entire tenor of the voir dire, and from my ability to

6

> observe these jurors as they were communicating with me and the attorneys, their demeanor, their interest, their desire to be forthcoming, their desire to be honest, and their desire to share anything that might be a bias.

Fernandez-Achecar now appeals.

## DISCUSSION

¶16 Whether an attorney rendered ineffective assistance is a mixed question of fact and law. *State v. Nielsen*, 2001 WI App 192, ¶14, 247 Wis. 2d 466, 634 N.W.2d 325. We will uphold the circuit court's factual findings unless they are clearly erroneous. *Id.* However, whether the defendant's proof is sufficient to establish ineffective assistance is a question of law that we review independently. *Id.*

¶17 To prevail on an ineffective assistance of counsel claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. To prove deficient performance, the defendant must point to specific acts or omissions by counsel that are "outside the wide range of professionally competent assistance." *Id.* at 690. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

¶18 If a defendant fails to make a sufficient showing on one prong of the *Strickland* test, we need not address the other. *Id.* at 697. Here, we conclude Fernandez-Achecar has not shown that his trial attorney performed deficiently by failing to have C.S. and P.M. removed from the jury pool because Fernandez-Achecar has not shown that either C.S. or P.M. was biased. *See State*

7

*v. Wheat*, 2002 WI App 153, ¶14, 256 Wis. 2d 270, 647 N.W.2d 441 ("Failure to raise an issue of law is not deficient performance if the legal issue is later determined to be without merit."); *State v. Tobatto*, 2016 WI App 28, ¶26, 368 Wis. 2d 300, 878 N.W.2d 701 ("The record supports the [circuit] court's implicit conclusion that Juror 10 was not subjectively biased, thus failing to remove her from the jury panel was not deficient performance."). Accordingly, we do not address the parties' arguments regarding prejudice.[2]

¶19 "The Sixth Amendment of the United States Constitution and Article I, Section 7 of the Wisconsin Constitution guarantee criminal defendants the right to an impartial jury." *State v. Funk*, 2011 WI 62, ¶31, 335 Wis. 2d 369, 799 N.W.2d 421 (footnotes omitted). We presume that prospective jurors are impartial, and "[t]he party challenging a juror's impartiality bears the burden of rebutting this presumption and proving bias." *Id.*

¶20 Wisconsin courts recognize three different types of juror bias: statutory bias, subjective bias, and objective bias. *State v. Lepsch*, 2017 WI 27, ¶22, 374 Wis. 2d 98, 892 N.W.2d 682. In this case, only subjective and objective bias are at issue.

¶21 Subjective bias is bias "that is revealed through the words and the demeanor of the prospective juror." *State v. Faucher*, 227 Wis. 2d 700, 717, 596 N.W.2d 770 (1999). "[I]t refers to the prospective juror's state of mind." *Id.* "A prospective juror is subjectively biased if the record reflects that the juror is not a

---

[2] In particular, we note that Fernandez-Achecar argues he does not need to show prejudice because allowing C.S. and P.M. to serve on the jury constituted structural error. Because we conclude that Fernandez-Achecar has failed to show that his trial attorney performed deficiently, we need not address this argument.

reasonable person who is sincerely willing to set aside any opinion or prior knowledge that the prospective juror might have." *State v. Theodore Oswald*, 2000 WI App 2, ¶19, 232 Wis. 2d 62, 606 N.W.2d 207 (1999).

¶22 Whether a prospective juror is subjectively biased turns on his or her responses during voir dire and on the circuit court's assessment of the prospective juror's honesty and credibility. *Faucher*, 227 Wis. 2d at 718. "[T]he circuit court sits in a superior position to assess the demeanor and disposition of prospective jurors, and thus, whether they are subjectively biased." *Id.* Consequently, "we will uphold the circuit court's factual finding that a prospective juror is or is not subjectively biased unless it is clearly erroneous." *Id.*

¶23 Objective bias, in turn, focuses not on the prospective juror's state of mind but on "whether [a] reasonable person in the individual prospective juror's position could be impartial." *Id.* "When assessing whether a juror is objectively biased, a circuit court must consider the facts and circumstances surrounding the voir dire and the facts involved in the case. However, the emphasis of this assessment remains on the reasonable person in light of those facts and circumstances." *Id.* at 718-19 (formatting altered).

¶24 The determination of whether a juror is objectively biased presents a mixed question of fact and law. *Id.* at 720. "[A] circuit court's findings regarding the facts and circumstances surrounding voir dire and the case will be upheld unless they are clearly erroneous." *Id.* (formatting altered). Whether the facts fulfill the legal standard for objective bias is a question of law, which we would normally review independently. *Id.* "However, a circuit court's conclusion on objective bias is intertwined with factual findings supporting that conclusion. Therefore, it is appropriate that [an appellate] court give weight to the circuit

court's conclusion on that question." *Id.* As a result, we will reverse a circuit court's conclusion that a potential juror is or is not objectively biased "only if as a matter of law a reasonable judge could not have reached such a conclusion." *Id.* at 721.

### I. C.S.

¶25 Although the circuit court did not expressly address subjective and objective bias during its oral ruling, the court implicitly determined that C.S. was neither subjectively nor objectively biased. The court found that C.S.'s responses during voir dire showed a "sense of fair play," and it interpreted C.S.'s comment that he "wasn't a lawyer" as reflective of the fact that the jurors had not yet been instructed on a defendant's constitutional right not to testify. The court also found that C.S.'s desire to consider the "full picture" showed that he would not find a person guilty simply because that person chose not to testify. In all, the court found C.S. to be "very attentive and very willing to offer [his] honest opinions and follow what was suggested." Having observed C.S.'s demeanor, "the circuit court [was] in a superior position to assess" subjective bias and was "particularly well-positioned" to determine objective bias. *See id.* at 718, 720.

¶26 The circuit court's implicit finding that C.S. was not subjectively biased is not clearly erroneous. *See id.* at 718. A juror whose initial response to a question during voir dire suggests subjective bias may be rehabilitated through follow-up questions. *See State v. Czarnecki*, 2000 WI App 155, ¶23, 237 Wis. 2d 794, 615 N.W.2d 672. Moreover, a prospective juror "need not utter magical words in order to qualify as an acceptable juror" and "need not unambiguously state his or her ability to set aside bias." *State v. Jimmie R.R.*, 2000 WI App 5, ¶28, 232 Wis. 2d 138, 606 N.W.2d 196 (1999).

¶27 Our supreme court's decision in *State v. Gutierrez*, 2020 WI 52, 391 Wis. 2d 799, 943 N.W.2d 870, is instructive. There, the defendant was charged with sexually assaulting his stepdaughter. *Id.*, ¶7. During voir dire, when defense counsel asked whether any potential juror felt that they could not be impartial given the nature of the charges, one prospective juror responded, "I don't know if I could be impartial. I work with kids. I drive school bus, so I deal with kids all the time, and I just, I don't know if I can be impartial." *Id.*, ¶11.

¶28 On appeal, the defendant argued that this statement was sufficient to establish the prospective juror's subjective bias. *Id.*, ¶40. Our supreme court disagreed, distinguishing *State v. Carter*, 2002 WI App 55, 250 Wis. 2d 851, 641 N.W.2d 517, where this court concluded that a juror was subjectively biased "based upon his affirmative response when asked if his brother-in-law's experience as a sexual assault victim would influence his ability to be fair and impartial in a sexual assault trial." *Gutierrez*, 391 Wis. 2d 799, ¶40. The supreme court reasoned that the potential juror's "uncertainty" in *Gutierrez* was "distinguishable from the juror's definitive 'yes'" in *Carter*. *Gutierrez*, 391 Wis. 2d 799, ¶41. The court explained, "We accept and tolerate that a prospective juror may honestly equivocate in response to voir dire questions exploring their fears, biases, and predilections." *Id.*

¶29 Notably, the record in *Gutierrez* was "devoid of any questions that could clarify whether [the potential juror] actually harbored any bias or, if she did, whether she was credibly willing to set it aside." *Id.*, ¶42. Nevertheless, the supreme court refused to speculate as to how the potential juror would have answered such questions. *Id.* Instead, given the presumption of impartiality, the supreme court concluded that "the circuit court did not err by seating [the potential juror] as a juror." *Id.*

11

¶30    Here, C.S. did not expressly state that he would refuse to find a defendant not guilty if the defendant did not testify in his or her own defense. Instead, C.S. initially stated that a defendant's decision not to testify would make it "more difficult" for him to find the defendant not guilty, explaining that he would want to hear the defendant's point of view. However, C.S. subsequently agreed that it would be "scary" for a defendant to testify, and he acknowledged that a person might not want to testify out of fear that they would "slip up."

¶31    Significantly, C.S. also clarified that he would not automatically infer guilt from a defendant's decision not to testify because "every situation has nuances," that he would not "slap" a guilty label on a defendant simply because he or she did not testify, and that he would tell other jurors to "look at the full picture." In addition, C.S. noted that he was not a lawyer, so he did not know all of the reasons why a defendant might choose not to testify.

¶32    Although C.S. did state that he would "probably" consider a defendant's decision not to testify, his responses, taken together, show that his true concern stemmed from a desire to consider all of the possible evidence, including the defendant's version of events. Moreover, C.S. provided his responses before being instructed on the law, including the circuit court's instruction that a defendant in a criminal case has an absolute constitutional right not to testify and that jurors may not consider a defendant's decision not to testify in reaching their verdict. We agree with the State that C.S.'s "uncertainty, desire to hear the whole story, and admitted ignorance of the law [do] not suggest that once [C.S.] had been instructed on the law, he could not set aside his personal desire to hear the defendant's point of view and decide the case impartially." *See State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989) (explaining that we presume that jurors follow the court's instructions). On this record, the circuit

court's factual finding that C.S. was not subjectively biased is not clearly erroneous.

¶33    Fernandez-Achecar has also failed to overcome the presumption of C.S.'s impartiality with respect to objective bias. "[E]xclusion of a juror for objective bias requires a direct, critical, personal connection between the individual juror and crucial evidence or a dispositive issue in the case to be tried or the juror's intractable negative attitude toward the justice system in general." *State v. James H. Oswald*, 2000 WI App 3, ¶8, 232 Wis. 2d 103, 606 N.W.2d 238. Again, the question is whether a reasonable person in the prospective juror's position could possibly be impartial. *Id.*, ¶4.

¶34    C.S.'s answers during voir dire did not reveal a personal connection to crucial evidence or dispositive issues in Fernandez-Achecar's case. Nor did C.S.'s answers show an intractable negative attitude toward the justice system in general. To the contrary, C.S.'s desire to consider all of the available facts showed an appreciation of the justice system and, as the circuit court found, a sense of "fair play." Moreover, nothing in the record suggests that C.S. knew about Fernandez-Achecar's constitutional right not to testify and intended to ignore that right after being instructed by the judge on the applicable law. Considered in their entirety, C.S.'s answers indicated that a reasonable person in his position could be impartial. *See id.* As noted above, the circuit court implicitly determined that C.S. was not objectively biased, and we cannot say "as a matter of law [that] a reasonable judge could not have reached such a conclusion." *See Faucher*, 227 Wis. 2d at 721.

**II. P.M.**

¶35　　The circuit court also implicitly determined that P.M. was neither subjectively nor objectively biased.  After reviewing the record, we agree with the State that the court's implicit finding of no subjective bias was not clearly erroneous.  *See id.* at 718.  In addition, we cannot say, as a matter of law, that a reasonable judge could not have concluded that P.M. was not objectively biased. *See id.* at 721.

¶36　　The sole indication of possible bias on P.M.'s part was the fact that she raised her hand when Fernandez-Achecar's trial attorney asked the potential jurors whether they agreed with another potential juror's statement that "if they don't get on the stand, I think they're guilty."  Fernandez-Achecar's trial attorney did not ask P.M. any follow-up questions regarding that topic.  However, defense counsel did follow up with C.S. and six other potential jurors.  P.M. was present for those exchanges and would have heard counsel's questions and the potential jurors' responses.  Ultimately, another potential juror stated, "Well, I can't—if he's telling the truth or lying, if he doesn't speak it and if the case is super weak, it may not—why risk it?  He can't lie if he doesn't speak."  Defense counsel then asked the jury pool, "Does anyone agree with that?  Does anyone disagree with that?"  P.M. did not raise her hand in response to either of those questions.

¶37　　We agree with the State that P.M.'s lack of a response to those follow-up questions is significant.  As noted above, P.M. spoke up at multiple other points during voir dire.  Specifically, she disclosed her prior jury service, a potential connection to defense counsel's law firm, her discomfort with the charges against Fernandez-Achecar, her belief that it is not "realistic" to wear a camera twenty-four hours a day to prevent a sexual assault accusation, and her

belief that criminal sentences can be overly harsh. P.M.'s general willingness to speak up during voir dire suggests that if she had any lingering concern about a defendant's decision not to testify following defense counsel's questioning of the other potential jurors, she would have been comfortable voicing that concern.

¶38 Moreover, as a general matter, P.M.'s responses during voir dire indicated that she was conscientious and, as the circuit court found, was "trying to be realistic, trying to be fair-minded." On this record, the circuit court's implicit finding that P.M. was not subjectively biased is not clearly erroneous. The mere fact that P.M. raised her hand in response to defense counsel's initial question about a defendant's decision not to testify being indicative of guilt does not show that P.M. was not "a reasonable person who [was] sincerely willing to set aside any opinion or prior knowledge that [she] might have." *See Theodore Oswald*, 232 Wis. 2d 62, ¶19. As with C.S., P.M. raised her hand in response to that question before being instructed by the court regarding a defendant's constitutional right not to testify, and there is nothing in the record to suggest that C.S. intended to ignore the court's instruction on that topic. *See Truax*, 151 Wis. 2d at 362.

¶39 Additionally, with respect to objective bias, P.M.'s responses during voir dire did not show that a reasonable person in her position could not be impartial. *See Faucher*, 227 Wis. 2d at 718. P.M.'s answers—including raising her hand in response to a single question about a defendant's decision not to testify—did not show a personal connection to crucial evidence or dispositive issues in the case, nor did they indicate an intractable negative attitude toward the justice system. *See James H. Oswald*, 232 Wis. 2d 103, ¶8. Again, there is nothing in the record to suggest that, after being instructed by the circuit court on a defendant's constitutional right not to testify, a reasonable person in P.M.'s

position would have been unable to follow the court's instruction. Consequently—and particularly in light of the presumption that jurors are impartial—we cannot say as a matter of law that a reasonable judge could not have concluded that P.M. was not objectively biased. *See **Faucher***, 227 Wis. 2d at 721.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).