STATE of Wisconsin, Plaintiff-Respondent,

v.

Howard C. CARTER, Defendant-Appellant.

Court of Appeals

*No. 01–2303–CR. Submitted on briefs January 14, 2002.—
Decided January 29, 2002.*

2002 WI App 55

(Also reported in 641 N.W.2d 517.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Charles Bennett Vetzner*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Edwin J. Hughes*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J.    Howard Carter appeals from a conviction after a jury trial for second-degree sexual assault, contrary to WIS. STAT. § 940.225(2)(a),[1] and an order denying his motion for postconviction relief.

---

[1] All statutory references are to the 1999–2000 version.

---

Carter argues he is entitled to a new trial because:   (1) he was denied his constitutional right to the effective assistance of counsel when his trial lawyer failed to remove a juror who was subjectively biased; and (2) he was improperly barred from presenting a prior inconsistent statement that the accuser in this sexual assault prosecution "had a crush" on him. In the alternative, Carter argues that the judgment should be vacated and his sentence should be reduced to the statutory maximum because the State failed to properly charge and prove that he was subject to an enhanced penalty as a repeat offender.

¶ 2.   We conclude that Carter is entitled to a new trial because the juror was subjectively biased and counsel was ineffective for failing to either challenge the juror for cause or use a peremptory challenge for the juror's removal. Therefore, we reverse the conviction and remand the matter for a new trial.[2]

## DISCUSSION

## I. Failure to remove allegedly biased juror

¶ 3.   Carter argues that he was denied the effective assistance of counsel when his trial lawyer failed to remove a juror who is alleged to be subjectively biased from the jury panel. The relevant portion of the voir dire is:

**THE COURT**: Mr. Lasee [Assistant District Attorney], would you continue your voir dire, please?

---

[2] Because we are reversing the conviction and remanding the matter for a new trial, we decline to address the evidentiary issue and Carter's challenge to his sentence as a repeater. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases should be decided on narrowest possible ground).

**MR. LASEE**: Yes. Thank you. I think, Mr. Kestly?

**PROSPECTIVE JUROR KESTLY**: Yes.

**MR. LASEE**: You indicated that you also knew someone, a relative, that was a victim of a sexual assault?

**PROSPECTIVE JUROR KESTLY**: Yes, brother-in-law.

**MR. LASEE**: *Do you feel that that would influence or affect your ability to be fair and impartial in this case?* (Emphasis added.)

**PROSPECTIVE JUROR KESTLY**: *Yes.* (Emphasis added.)

**MR. LASEE**: How long ago did that occur?

**PROSPECTIVE JUROR KESTLY**: It occurred before I had met my wife, but things have, you know, those things—through lawsuits, and I found out about it much later after he got married.

**MR. LASEE**: So it was not a circumstance where you were directly personally involved?

**PROSPECTIVE JUROR KESTLY**: No.

**MR. LASEE**: There was though some investigation involved in it?

**PROSPECTIVE JUROR KESTLY**: Not through him, but other individuals that were also involved.

**MR. LASEE**: Okay, thank you. Anyone else have a relationship of that nature?

¶ 4. Kestly was not asked any additional individual questions during voir dire and ultimately served on the jury that convicted Carter. At a postconviction

*Machner*[3] hearing, Carter's counsel explained that he did not challenge the juror, Kestly, because he believed that Kestly could be fair and impartial. Counsel reached this conclusion by relating Kestly's experience to his own:

> From my own personal experience, which I thought of at the particular time, was I was told by my mother just within a few years that a sister-in-law had been sexually assaulted as a child, I believe. And judging from that experience and the effect that had on me, I did not think that would result in someone—would affect someone's ability to be fair and impartial because something occurred before—to someone before they knew them and were somehow related to them by marriage.

¶ 5.   Counsel's conclusion that Kestly would not be biased rested also on Kestly's earlier general assurances that he could be fair and impartial. However, that occurred before the questioning about his experience with sexual assault victims. When specifically asked whether his experience would influence or affect his ability to be fair and impartial in this case, Kestly answered yes.

¶ 6.   The circuit court concluded at the postconviction hearing that Kestly's situation was different from another juror who gave similar answers and was excused for cause. The court stated, "[t]here is no question that in the context of that voir dire Mr. Kestly in no way evidenced any bias or prejudice."

¶ 7.   In *State v. Faucher*, 227 Wis. 2d 700, 717, 596 N.W.2d 770 (1999), the supreme court described three types of juror bias—statutory, objective and subjective:

---

[3] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

We intend the term "subjective bias" to describe bias that is revealed through the words and the demeanor of the prospective juror. While the term "subjective" is not meant to convey precisely the same sense of bias as did the term "actual," the two terms are closely related. As did actual bias, subjective bias refers to the bias that is revealed by the prospective juror on *voir dire:* it refers to the prospective juror's state of mind.

¶ 8.   Here, Kestly's response demonstrates unequivocally that he was subjectively biased. Without any ambiguity, he stated that his own personal experience with a sexual assault in his family would influence or affect his ability to be fair and impartial. Despite this statement, the trial court found that Kestly was not subjectively biased. *Faucher* suggests that where the trial court has found that the juror is not subjectively biased, we can reach the opposite conclusion only if we conclude that the trial court's finding was clearly erroneous. *See id.* at 718 (trial court's conclusion that juror is subjectively biased is not to be disturbed unless it is clearly erroneous).

¶ 9.   In *Faucher*, the court explained why it was utilizing the clearly erroneous standard:

> We have stated in another context that a subjective inquiry will often not be susceptible to direct proof. *See Stern v. Thompson & Coates, Ltd.*, 185 Wis. 2d 220, 236, 517 N.W.2d 658 (1994). And so it is true of a circuit court's inquiry into the prospective juror's state of mind. While there may be the occasion when a prospective juror explicitly admits to a prejudice, or explicitly admits to an inability to set aside a prejudice, most frequently the prospective juror's subjective bias will only be revealed through his or her demeanor. Therefore, we caution that whether a prospective juror is subjectively biased turns on his or her responses on *voir*

857

*dire* and a circuit court's assessment of the individual's honesty and credibility, among other relevant factors. And just as was true of a circuit court's finding on actual bias, we believe that the circuit court sits in a superior position to assess the demeanor and disposition of prospective jurors, and thus, whether they are subjectively biased. Given the circuit court's superior position to so assess the demeanor and disposition of prospective jurors, we remain convinced that "[i]n most cases a circuit court's discretion in determining the potential for [subjective] juror impartiality or bias will suffice to protect a defendant's right to an impartial jury." [*State v.*] *Gesch*, 167 Wis. 2d [660,] 666[, 482 N.W.2d 99 (1992)]. On review, we will uphold the circuit court's factual finding that a prospective juror is or is not subjectively biased unless it is clearly erroneous.

*Id.* at 717–18.

■

¶ 10.   Carter contends that the clearly erroneous standard should not apply here because this is one of those rare situations where the prospective juror's unambiguous response, rather than his demeanor, illustrates his subjective bias. We agree.

¶ 11.   As Carter observes, in *State v. Ferron*, 219 Wis. 2d 481, 501, 579 N.W.2d 654 (1998), the supreme court employed the clearly erroneous standard while explaining that questions concerning a prospective juror's sincere willingness to set aside bias should be left largely to the circuit court's discretion. The court also noted that without the appropriate follow-up questions, the prospective juror's responses were insufficient to indicate a sincere willingness to set aside his or her bias. *Id.*

■

¶ 12.   Here, the clearly erroneous standard is particularly inappropriate because Kestly was never ques-

tioned about his admitted bias or asked if he could set his bias aside. Nor did anybody ask any follow-up questions to ascertain whether Kestly could be fair and impartial. Therefore, because Kestly openly admitted his bias and his partiality was never questioned, we agree that Kestly was subjectively biased as a matter of law.

¶ 13.  Additionally, even if we were to apply the clearly erroneous standard, the court's finding that Kestly's demeanor demonstrated his impartiality is unsupported by the record. We could find no references in the record describing Kestly's demeanor that would suggest his impartiality after he admitted that knowing a relative who was the victim of a sexual assault would affect his ability to be fair and impartial in this case. The court made no reference to its observations of Kestly's demeanor to support its conclusion. Nor did the State offer anything in the record to suggest Kestly's impartiality after he admitted his bias. Thus, whether we review this issue as a question of law, or as a question of fact under the clearly erroneous standard, we conclude that Kestly was subjectively biased.

¶ 14.  The next question is whether defense counsel's failure to move for Kestly's removal from the jury panel or to question his impartiality constituted ineffective assistance of counsel. A failure to object or to further question a juror may be raised as a claim of ineffective assistance of counsel. *State v. Williams*, 2000 WI App 123, ¶ 21, 237 Wis. 2d 591, 614 N.W.2d 11. We need not repeat the often-stated, two-part test of deficient performance and prejudice in deciding whether counsel provided ineffective representation. *Id.* at ¶¶ 22–23.

¶ 15.  Here, counsel failed to further question the juror's statement of admitted bias, failed to move to strike the prospective juror for cause and failed to use a peremptory challenge to remove him from the jury panel. A guilty verdict without twelve impartial jurors renders the outcome unreliable and fundamentally unfair. *See State v. Krueger*, 2001 WI App 14, ¶¶ 4, 15, 240 Wis. 2d 644, 623 N.W.2d 211. Consequently, counsel's failure to act to remove a biased juror who ultimately sat on the jury constitutes deficient performance resulting in prejudice to his client. Accordingly, we reverse the conviction and remand the matter for a new trial.

*By the Court.*—Judgment and order reversed and cause remanded with directions.