STATE of Wisconsin, Plaintiff-Appellant,

v.

Todd Brian TOBATTO, Defendant-Respondent.

Court of Appeals

*No. 2015AP254–CR. Submitted on briefs December 1, 2015.—Decided March 8, 2016.*

2016 WI App 28

(Also reported in 878 N.W.2d 701.)

302

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Brad D. Schimel*, attorney general, and *Daniel J. O'Brien*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Leon W. Todd*, assistant state public defender of Milwaukee.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. KESSLER, J. The State of Wisconsin ap-

peals an order of the postconviction court granting a new trial to Todd Brian Tobatto. The postconviction court found that Tobatto's trial counsel rendered ineffective assistance with respect to jury selection. Specifically, the postconviction court determined that counsel's failure to remove a particular juror, Juror Number Ten (Juror 10), prejudiced Tobatto's trial. We conclude that Juror 10 was not shown to be biased and therefore trial counsel was not ineffective. Therefore, Tobatto is not entitled to a new trial. We reverse.

## BACKGROUND

¶ 2. Tobatto was convicted, following a jury trial, of one count of stalking with a previous conviction within seven years, and one count of violating a restraining order or injunction.[1] At trial, thirty prospective jurors were examined.

### *Voir Dire.*

¶ 3. During *voir dire*, the trial court read the charges against Tobatto to the jury and asked "is there anyone here unwilling to give the defendant the benefit of his presumption of innocence?" No potential juror raised his or her hand.

¶ 4. After all of the individual potential jurors introduced themselves, the State asked a series of questions to gauge the jurors' willingness to follow the

---

[1] The Honorable Mary Triggiano presided over the trial and sentencing. The Honorable Lindsey Canonie Grady presided over the postconviction hearing. Because it is significant to the facts of this case that different judges presided over the trial and postconviction proceedings, we refer to Judge Triggiano as "the trial court" and Judge Grady as "the postconviction court."

trial court's instructions. Each of the thirty potential jurors, including Juror 10, indicated a willingness to follow the court's instructions:

> Now, does everyone here, generally-speaking, promise to follow the court's instructions? It appears every single hand has been raised. Now, the court's instructions include instructions about the trial procedure, and they also include instructions about the law of the State of Wisconsin. Let's say when it comes to the law you hear something that you personally disagree with, is everyone in this room, nevertheless, willing to follow the court's instructions? It appears everyone raised their hands. So with these offenses specifically, stalking, for example, I'm sure every person in this room can envision a certain course of conduct when the word stalking is mentioned. But, nevertheless, what you envision might be different than the substantive law in the [S]tate of Wisconsin. So for the stalking component of this case, does everyone promise to follow the court's instructions about the law of stalking? It appears everyone's raised their hands.

¶ 5. The State then asked whether any of the potential jurors "have been through a bad breakup before?" Approximately sixty percent of the jurors raised their hands. The State then asked: "Now, has anyone here post-breakup been harassed by an ex-spouse or significant other?" The State defined "harassed" as "[b]othered, intimidated, annoyed, you name it." Nine potential jurors raised their hands— Jurors eight, nine, ten, eleven, eighteen, twenty-one, twenty-four, twenty-seven, and twenty-eight. As relevant to this appeal, the following exchange took place with Juror 10:

[State]: Juror number 10, did you raise your hand?

[Juror 10]: Yes.

[State]: Ma'am, why did you raise your hand?

[Juror 10]: I had a similar situation where with an ex an[d] he threatened me after we broke up.

[State]: Threatened you?

[Juror 10]: Yeah.

[State]: Do you mind being a little more specific?

[Juror 10]: We – like whip my ass pretty much.

[State]: Did anything come of it?

[Juror 10]: We went through the court system. The police came and –

[State]: Did you file a restraining order against him?

[Juror 10]: Yes.

. . . .

[State]: Okay. So your ex abided by it?

[Juror 10]: Well, he called me.

[State]: In violation of the order?

[Juror 10]: Yeah.

[State]: Did anything criminal come of it?

[Juror 10]: No.

. . . .

[Juror 10]: We're still – we have a child together, so we're still like going through the system.

[State]: So the same question I've asked for [other jurors], if you're selected will you be able to set that experience aside and be a fair and impartial juror?

[Juror 10]: I don't know if I'll be a hundred percent objective because I had my personal experiences that impact what I believe now as far as the law. I mean, I'm not going to go against what that says, but I know that's for interpretation as well.

¶ 6. Trial counsel did not question Juror 10 further. Counsel did not move to strike Juror 10 for cause, nor did counsel exercise a peremptory strike against Juror 10. Ultimately, Juror 10 was impaneled and served on the jury, which found Tobatto guilty.

**Postconviction Proceedings.**

¶ 7. Tobatto filed a postconviction motion alleging multiple instances of trial counsel ineffectiveness and trial court error as to jury selection. The core of Tobatto's motion was that trial counsel failed to thoroughly question Juror 10 as to her ability to be impartial, failed to move to strike Juror 10 for cause, and failed to exercise a peremptory strike against Juror 10. Tobatto also argued that the trial court failed to strike Juror 10 for cause, and failed to strike another juror, Juror Number Twenty-one (Juror 21), for cause, thus forcing trial counsel to exercise one of his strikes against Juror 21. Counsel's use of a peremptory strike against Juror 21, Tobatto argued, left him unable to use a peremptory strike against Juror 10. According to Tobatto, the impaneling of Juror 10 prejudiced his trial.

¶ 8. The postconviction court, which was assigned the case due to judicial rotation and did not preside over the trial and sentencing, held a *Machner*

hearing.[2] Trial counsel testified at the hearing, explaining his thought process during the *voir dire*. Specifically, counsel explained why he thought Juror 10 would be "a good juror for our case." Counsel testified that Juror 10, despite having a "prior situation involving harassment," "seemed logical and not . . . not emotional about the issues when she answered, rather straightforward and confident." Counsel testified that he remembered Juror 10 well, even remembering where she sat, and that Juror 10 "stood out to me as paying close attention to what I was saying." Counsel was not concerned about Juror 10's relationship history, stating, "from her demeanor, it didn't seem like she was upset by it, and I believe she said that she would follow up, be fair and impartial the best she could." Counsel testified that he did not ask Juror 10 follow-up questions because her answers to previous questions indicated that she would try her best to be impartial.

¶ 9. Trial counsel also explained that he observes a juror's demeanor, body language and confidence prior to making a determination as to who to strike. Counsel testified that he exercised his strikes against jurors who either had experiences similar to the conduct Tobatto was charged with, were "more emotional," did not exude confidence, or indicated difficulty with being impartial.

¶ 10. The postconviction court, in an oral decision, granted Tobatto's motion for a new trial. The postconviction court declined to make a ruling based on trial court error, instead concluding that Juror 10 exhibited a subjective bias and trial counsel was inef-

[2] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

fective for failing to remove her. Relying on *State v. Carter*, 2002 WI App 55, 250 Wis. 2d 851, 641 N.W.2d 517, the postconviction court found that trial counsel was ineffective for failing to ask Juror 10 follow-up questions, failing to move to strike Juror 10 for cause, and failing to exercise a peremptory strike against Juror 10. The court stated:

> The question is, is an individual juror either telling us that they are biased in creating their subjective bias or would a reasonable person after hearing those answers and knowing what the juror went through saying, um-hum, they can't; they cannot be fair.
>
> I just don't think that there is a way around that.
>
> So, then when you see that, someone had a duty to act . . . . I can already determine based on the record that's before me and the [*Machner*] hearing that [trial counsel] did have that duty and that that failed.
>
> And that by an omission, his specific failure to deal with that juror who, ultimately, landed on the jury rendered his actions outside of the reasonable norms.
>
> . . . .
>
> And it was product of incompetence, not of trial strategy.
>
> The only remedy here is a new trial.

¶ 11. This appeal follows.

## DISCUSSION

### Ineffective Assistance of Counsel Standard.

■■■■■

¶ 12. A defendant claiming ineffective assistance of counsel must prove both that his or her lawyer's

representation was deficient and, as a result, that he or she suffered prejudice. *Strickland v. Washington*, 466 U.S. 668, 690 (1984); *State v. Johnson*, 133 Wis. 2d 207, 216–17, 395 N.W.2d 176 (1986). To prove deficient performance, a defendant must show specific acts or omissions of counsel that were "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. We "strongly presume[]" counsel has rendered adequate assistance. *See id.* To show prejudice, a defendant must demonstrate that the result of the proceeding was unreliable. *Id.* at 687. If a defendant fails on either aspect—deficient performance or prejudice—the ineffective-assistance-of-counsel claim fails. *Id* . at 697.

¶ 13. Whether a lawyer gives a defendant ineffective assistance of counsel is a mixed question of law and fact. *Johnson*, 133 Wis. 2d at 216. Generally, the postconviction court's findings of fact will be upheld unless they are clearly erroneous. *See State v. Pitsch*, 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985). Whether proof satisfies either the deficiency or the prejudice prong is a question of law that this court also reviews *de novo. See id.*

¶ 14. Where, as here, the postconviction court did not preside over the trial, however, we review the postconviction court's findings of fact *de novo. See State v. Herfel*, 49 Wis. 2d 513, 521, 182 N.W.2d 232 (1971). "[W]hen a judge who decided [a postconviction motion] did not hear the evidence at trial this court on appeal starts from scratch and examines the record *de novo* so that it can consider the facts directly on which the legal issue raised by motion depends." *Id.* (emphasis added).

**Counsel did not render ineffective assistance because the evidence does not establish that Juror 10 was subjectively biased.**

¶ 15. The crux of the State's argument is that the record does not support the postconviction court's determination that Tobatto was denied his right to a fair trial on the basis of Juror 10's subjective bias; thus, counsel was not ineffective for failing to remove Juror 10. We agree.

**a. Subjective Bias.**

¶ 16. "The United States and Wisconsin Constitutions guarantee a criminal defendant the right to a trial by an impartial jury." *State v. Oswald*, 2000 WI App 2, ¶ 16, 232 Wis. 2d 62, 606 N.W.2d 207. "A juror who 'has expressed or formed any opinion, or is aware of any bias or prejudice in the case' should be removed from the panel." *Id.* (citing WIS. STAT. § 805.08(1) (1999–2000)).[3] "Additionally, '[i]f a juror is not indifferent in the case, the juror shall be excused.' " *Oswald*, 232 Wis. 2d 62, ¶ 16 (citing § 805.08(1) (1999–2000); brackets in *Oswald*).

¶ 17. Generally, we employ a clearly erroneous standard when evaluating a trial court's determination of subjective bias. *See State v. Gesch*, 167 Wis. 2d 660, 666, 482 N.W.2d 99 (1992) (Given the trial court's superior position to assess the demeanor and disposition of prospective jurors, we remain convinced that "[i]n most cases a circuit court's discretion in deter-

---

[3] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

mining the potential for [subjective] juror impartiality or bias will suffice to protect a defendant's right to an impartial jury."). "Although the proper exercise of discretion contemplates that the [trial] court explain its reasoning, when the court does not do so, we may search the record to determine if it supports the court's discretionary decision." *Randall v. Randall*, 2000 WI App 98, ¶ 7, 235 Wis. 2d 1, 612 N.W.2d 737.

¶ 18. The State argues that we should not give deference to the postconviction court's finding of subjective bias because the postconviction court did not preside over the trial, and thus could not have observed the demeanor and disposition of Juror 10 as the trial court (and trial counsel) did. We agree. A trial court's determination that a prospective juror is, or is not, subjectively biased is a factual finding. *See State v. Lindell*, 2001 WI 108, ¶ 36, 245 Wis. 2d 689, 629 N.W.2d 223. Findings of fact regarding a trial, made at a hearing by a postconviction court that did not preside over trial, are reviewed *de novo*. *See Herfel*, 49 Wis. 2d at 521.

¶ 19. The issue here is whether Juror 10 demonstrated subjective bias. In *State v. Faucher*, 227 Wis. 2d 700, 717, 596 N.W.2d 770 (1999), the Wisconsin Supreme Court explained "subjective bias" as follows:

> We intend the term "subjective bias" to describe bias that is revealed through the words and the demeanor of the prospective juror. While the term "subjective" is not meant to convey precisely the same sense of bias as did the term "actual," the two terms

are closely related. As did actual bias, subjective bias refers to the bias that is revealed by the prospective juror on *voir dire:* it refers to the prospective juror's state of mind.

¶ 20. During *voir dire,* the transcript indicates that Juror 10 stated that she, like multiple other jurors, had experienced a "bad breakup." In response to counsel's question about her ability to remain objective, Juror 10 stated:

I don't know if I'll be a hundred percent objective because I had my personal experiences that impact what I believe now as far as the law. I mean, I'm not going to go against what that says, but I know that's for interpretation as well.

¶ 21. Relying on *Carter*, the postconviction court determined that Juror 10's response reflected a subjective bias. In *Carter*, the defendant was found guilty, following a jury trial, of second-degree sexual assault. *See id.*, 250 Wis. 2d 851, ¶ 1. During *voir dire,* a prospective juror told the court that a close relative of his had been sexually assaulted. *Id.*, ¶ 3. The State asked the prospective juror: "Do you feel that that would influence or affect your ability to be fair and impartial in this case?" *Id.* (emphasis omitted). The prospective juror replied, "Yes." *Id.* (emphasis omitted). Trial counsel did not ask any follow-up questions, nor did counsel seek to remove the prospective juror by any means. *Id.*, ¶ 4. Ultimately, the juror served on the panel and the defendant was convicted. *Id.* We concluded that the defendant was entitled to a new trial because the juror's response "demonstrate[d] unequivocally that he was subjectively biased." *Id.*, ¶ 8. The juror unambiguously stated that he would not be impartial. *Id.* We also

concluded that trial counsel was ineffective for failing to take any steps to remove the biased juror. *Id.*, ¶ 14–15.

¶ 22. This case is distinguishable from *Carter*. Here, nothing about Juror 10's answer suggests that she had prejudged the case or had her own preset "concept of justice." *See State v. Traylor*, 170 Wis. 2d 393, 399, 489 N.W.2d 626 (Ct. App. 1992). Nor did her answer indicate that she was "unreasonable and unwilling to set aside preconceived opinions or prior knowledge." *See State v. Williams*, 2015 WI 75, ¶ 80, 364 Wis. 2d 126, 867 N.W.2d 736. Indeed, when the potential jurors were asked specifically whether they would be willing to follow court instructions, Juror 10 raised her hand. Juror 10 told the trial court that she was influenced by her experience with the court system, but would not go against the letter of the law. In short, Juror 10 was honest. "[A] prospective juror need not respond to *voir dire* questions with un-equivocal declarations of impartiality. Indeed, we . . . fully expect a juror's honest answers at times to be less than unequivocal." *State v. Erickson*, 227 Wis. 2d 758, 776, 596 N.W.2d 749 (1999) (emphasis added). Because we are not persuaded that Juror 10's responses unequivocally revealed subjective bias, we conclude that counsel was not ineffective for failing to remove Juror 10 from the jury panel. *See State v. Toliver*, 187 Wis. 2d 346, 360, 523 N.W.2d 113 (Ct. App. 1994) (counsel is not ineffective for failing to pursue a meritless issue).

### b. Counsel's *Machner* Testimony.

¶ 23. At the *Machner* hearing, trial counsel indicated that he did not feel Juror 10's response reflected a bias, based, in part, on her demeanor. A "prospective juror's subjective bias will only be revealed through his or her demeanor." *Faucher*, 227 Wis. 2d at 718. Counsel remembered Juror 10 vividly, telling the court that she was "a good juror for our case" because she carried herself with confidence, was not "emotional" when discussing her "bad breakup," and was paying close attention during the process. Counsel testified that he did not ask follow-up questions because he did not sense bias in her answer. Counsel also stated that Juror 10 affirmatively indicated that she could follow court instructions and the law in response to questions from the State, which counsel viewed as eliminating the need for follow-up questions.

¶ 24. Of the thirty prospective jurors, nine revealed histories of "bad breakup[s]" or domestic abuse. Because counsel was given five peremptory strikes, he obviously could not have eliminated all nine of those potential jurors. Counsel explained how he used his five peremptory strikes, telling the postconviction court that he sought to remove jurors who he perceived as highly emotional, blatantly impartial, and not confident in their demeanors. Juror 10, he stated, did not fit these descriptions, so he did not remove her.

¶ 25. Counsel's decision not to seek to remove Juror 10 was deliberate, based on articulated reasons which were not unreasonable or irrational. "We will not second guess trial counsel's selection of trial tactics or strategies in the face of alternatives that he or she

has considered." *State v. Nielsen*, 2001 WI App 192, ¶ 26, 247 Wis. 2d 466, 634 N.W.2d 325. Here it was counsel, not the postconviction court, who was in the superior position to "assess[] . . . [Juror 10's] honesty and credibility, among other relevant factors." *See Faucher*, 227 Wis. 2d at 718. Because we conclude that counsel did not perform deficiently when he rationally chose not to strike Juror 10, we do not address the prejudice prong of the *Strickland* test. *See Strickland*, 466 U.S. at 697.

¶ 26. Counsel's performance was not deficient for two independent reasons. The record supports the trial court's implicit conclusion that Juror 10 was not subjectively biased, thus failing to remove her from the jury panel was not deficient performance. Counsel, who was present at trial and observed the entire jury panel, including Juror 10, articulated reasonable strategic reasons for not removing her from the jury panel. The postconviction court lacked the observation opportunities that both the trial court and trial counsel had with regard to Juror 10, and the postconviction court's conclusion of Juror 10's subjective bias and trial counsel's ineffective performance based on that finding of Juror 10's subjective bias is not supported by the record.

By the Court.—Order reversed.