# COURT OF APPEALS
## DECISION
## DATED AND FILED

## December 17, 2019

**Sheila T. Reiff**
**Clerk of Court of Appeals**

## NOTICE

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.    2018AP2308**
**2018AP2309**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2017TP264
2017TP265

**IN COURT OF APPEALS**
**DISTRICT I**

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.A.S., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

       PETITIONER-RESPONDENT,

  V.

N.M.A.-S.,

       RESPONDENT-APPELLANT.

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.J.S., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

       PETITIONER-RESPONDENT,

  V.

N.M.A.-S.,

**RESPONDENT-APPELLANT.**

---

APPEALS from orders of the circuit court for Milwaukee County: DAVID A. FEISS, Judge. *Affirmed*.

¶1    BRASH, P.J.[1] N.M.A.-S. appeals the orders of the trial court terminating her parental rights of A.A.S. and A.J.S. N.M.A.-S. asserts that she received ineffective assistance of counsel because her trial counsel failed to request a strike for cause or use a peremptory strike for a juror who answered a question affirmatively during *voir dire* relating to whether someone struggling with addiction is unfit to be a parent.

¶2    A postjudgment hearing regarding this claim was held in September 2019. The postjudgment court[2] determined that N.M.A.-S. had not demonstrated that she was prejudiced by this alleged deficiency of trial counsel, and denied her motion for a new trial. We agree and affirm the orders terminating N.M.A.-S.'s parental rights.

## BACKGROUND

¶3    N.M.A.-S. is the biological mother of A.A.S., born January 17, 2013, and A.J.S., born December 4, 2013. The Division of Milwaukee Child

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] The Honorable David A. Feiss presided over the jury trial and the disposition hearing, and we refer to him as the trial court. The Honorable M. Joseph Donald presided over the motion hearing, and we refer to him as the postjudgment court.

Protective Services (DMCPS)[3] became involved with the family after an incident in August 2014 where A.A.S. was found to have opiates in her system. The police had been called to a Super 8 hotel on South Howell Avenue in Milwaukee by a concerned citizen who heard N.M.A.-S. and the children's father, A.S., "yelling[] and screaming at each other." The caller said the parents appeared to be under the influence of something; they did not smell of alcohol, but were "high as a kite"—the father was pacing and appeared "jittery and agitated," and the mother kept "nodding off."

¶4 When police arrived, in addition to the parents being under the influence, they found that A.A.S. had an "altered mental status": her head was "drooping" and "she kept falling over." She was transported to a hospital where it was discovered that she had ingested an opiate, later determined to be morphine. Both parents denied having any knowledge of how A.A.S. had gotten the opiates, although N.M.A.-S. later told a case worker that she took morphine—as well as Oxycodone and Percocet—for fibromyalgia.

¶5 DMCPS took custody of both A.A.S. and A.J.S. that night, based on two "present dangers": one of the children had unexplained injuries, and the parent—N.M.A.-S.—was currently, and consistently, under the influence of an intoxicant.[4] A.A.S. and A.J.S. were subsequently found to be children in need of protection or services, and a dispositional order placing the children outside of

---

[3] When these proceedings began, DMCPS was still known by its previous name, the Bureau of Milwaukee Child Welfare (BMCW). All references will be to the current name, DMCPS.

[4] N.M.A.-S. had a long history of substance abuse that was known to DMCPS. In fact, when A.A.S. was born, she tested positive for both methadone and cocaine.

their parents' home was entered in December 2014. That order required that N.M.A.-S. maintain sobriety; manage her mental health issues; communicate with the case manager assigned through DMCPS; and demonstrate that she could parent the children, protect them, and provide for their safety. Additionally, the order required that N.M.A.-S. have regular visitation with the children.

¶6 N.M.A.-S. failed to meet these requirements. She did not visit the children regularly, sometimes going for weeks or months at a time without contacting them. In fact, she had no contact with the children—including via telephone or via written or electronic contact—for a three-month period between November 1, 2016 to February 1, 2017, which constitutes abandonment pursuant to WIS. STAT. § 48.415(1)(a)2.

¶7 Furthermore, N.M.A.-S. did not demonstrate that she could maintain sobriety: she missed several scheduled appointments for AODA assessments, and was discharged from the program for lack of attendance and participation. She attended supervised visits under the influence of Xanax and morphine. She also refused to provide urine samples or take any test to determine whether she was under the influence of drugs.

¶8 Additionally, N.M.A.-S. did not actively engage in the care of the children, and refused to sign a consent form to allow for A.A.S. to participate in speech therapy as recommended by her pediatrician. She also refused to allow the case manager to come to her home and complete a safety assessment.

¶9 As a result, petitions for the Termination of Parental Rights (TPR) of N.M.A.-S. with regard to A.A.S. and A.J.S. were filed in October 2017. In the petitions, the State alleged three grounds for termination: (1) N.M.A.-S.'s abandonment of the children, pursuant to WIS. STAT. § 48.415(1)(a)2.; (2) the

children's continuing need of protection or services, pursuant to § 48.415(2); and (3) N.M.A.-S.'s failure to assume parental responsibility, pursuant to § 48.415(6).

¶10 A jury trial on these matters commenced on June 11, 2018. During the *voir dire* of potential jurors, N.M.A.-S.'s trial counsel asked, "Is there anyone that believes that someone who is struggling with an addiction currently is not fit to parent their children?" Eleven potential jurors raised their hands to indicate their agreement with this opinion.

¶11 Trial counsel then asked each of those jurors individually to provide an explanation regarding their opinions. As relevant to this appeal, Juror 8 stated, "I've just worked with students that have picked up on what their parents are addicted [to] and are doing. And I just don't think it's right for your children to have to go through that." Counsel then asked Juror 8, "Do you think you'll be able to give [N.M.A.-S.] a fair shot given that we're going to be talking about addiction in this case?" There was no response from Juror 8 noted in the record; it merely indicates that counsel went on to ask Juror 15 about his opinion.

¶12 After *voir dire* was completed, the trial court and the parties discussed strikes for cause. Several potential jurors were struck, based on requests by both N.M.A.-S.'s trial counsel and the State; some of those requests were denied by the court. The parties then determined the jurors on which they wanted to exercise their peremptory strikes. The record does not indicate any further discussion regarding Juror 8.

¶13 A jury was impaneled that afternoon, which included Juror 8. After a three-day trial, the jury returned a verdict that the State had proven the grounds

set forth in the TPR petitions.[5]  A dispositional hearing was then held, where the trial court ultimately found that N.M.A.-S.'s parental rights should be terminated.[6]

¶14  N.M.A.-S. filed a notice of appeal, but subsequently filed a motion to remand the matters for a hearing on her motion for a new trial.  In that motion, N.M.A.-S. argued that her trial counsel was ineffective for failing to challenge Juror 8 for cause or use a peremptory strike.[7]  A hearing on that motion was held in September 2019,[8] in which the postjudgment court heard testimony from N.M.A.-S.'s trial counsel.

¶15  Trial counsel testified that her primary strategy in picking the jury was "to gauge what people's opinions were on AODA issues, since that was really the reason the case came into the court system in the first place, and the reasons that were preventing a safe return home" for the children.  Counsel also stated that she had exercised all of the allotted peremptory strikes, with substantial input from N.M.A.-S.  Counsel explained that they had not used the peremptory strikes against Juror 8 because there were likely other jurors that she and N.M.A.-S.

---

[5] At the time of trial, the State chose not to proceed with the abandonment claim.

[6] A.S.'s parental rights for both children were also terminated at that time.  He is not involved in this appeal.

[7] In her motion for a new trial, N.M.A.-S. also asserts that, in addition to challenging Juror 8, her trial counsel should have challenged Juror 20.  However, she does not raise this challenge on appeal, presumably because Juror 20 was struck as the alternate and did not participate in deliberations.  Therefore, we do not discuss any issues with regard to Juror 20.  *See State v. Ayala*, 2011 WI App 6, ¶22, 331 Wis. 2d 171, 793 N.W.2d 511 ("An issue raised in the trial court but not argued in a party's appellate brief is deemed abandoned and will not be considered.").

[8] N.M.A.-S. did not appear at this motion hearing; her postjudgment counsel was unaware as to why she did not attend the hearing.

"dislike[d]" more than Juror 8, and thus they had used the strikes against those jurors instead.

¶16     Trial counsel further explained that when she had asked the jurors whether they could give N.M.A.-S. a "fair shot," she was referring to whether they would be able to "judge the case fairly and impartially." Although the record does not reflect an answer to this inquiry from Juror 8, trial counsel asserted that she would not have moved on to question the next juror if there had been no response to the question by Juror 8. In other words, if Juror 8 had not given some type of nonverbal response, or had "done something with [his or her] demeanor or body language" to indicate bias against N.M.A.-S., trial counsel stated that she would have further questioned Juror 8. Trial counsel further testified that she did not remember "anybody not responding to a question."

¶17     The postjudgment court denied N.M.A.-S.'s motion. In its decision, it noted that while there may have been "some nonverbal queues that gave [trial counsel] the belief or the position that Juror Number 8 could, in fact, be fair," there was no definitive indication of that in the record. The court deemed that to be a deficiency. However, the court found that N.M.A.-S. was not prejudiced by this deficiency, since N.M.A.-S. was "very active in the exercise of peremptory challenges" and had conferred with trial counsel regarding the strikes. Therefore, the court found that there was no prejudice for trial counsel's failure to move to strike for cause or to exercise a peremptory challenge with respect to Juror 8; thus, her ineffective assistance claim failed. This appeal follows.

## DISCUSSION

¶18    "Wisconsin applies the two-part test described in *Strickland* [*v. Washington*, 466 U.S. 668 (1984)], for evaluating claims of ineffective assistance of counsel." *State v. Roberson*, 2006 WI 80, ¶28, 292 Wis. 2d 280, 717 N.W.2d 111.  To prove ineffective assistance of counsel, a defendant must show both that his trial counsel's performance was deficient and that the deficiency prejudiced the defense.  *Strickland*, 466 U.S. at 687.  With regard to the deficiency prong, a defendant must demonstrate that specific acts or omissions of counsel "were outside the wide range of professionally competent assistance."  *Id.* at 690.  However, trial counsel is "'strongly presumed to have rendered' adequate assistance within the bounds of reasonable professional judgment."  *State v. Balliette*, 2011 WI 79, ¶25, 336 Wis. 2d 358, 805 N.W.2d 334 (quoting *Strickland*, 466 U.S. at 690).

¶19    For the prejudice prong, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Love*, 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62 (citations and internal quotation marks omitted).  Indeed, there must be a "substantial, not just conceivable, likelihood of a different result." *State v. Starks*, 2013 WI 69, ¶55, 349 Wis. 2d 274, 833 N.W.2d 146 (citation omitted).  If a defendant fails to satisfy one component of the analysis, a court need not address the other.  *Strickland*, 466 U.S. at 697.

¶20    Our standard of review for ineffective assistance of counsel claims presents "a mixed question of law and fact." *State v. Johnson*, 153 Wis. 2d 121,

127, 449 N.W.2d 845 (1990). Generally, the findings of fact made by the trial court will not be overturned unless clearly erroneous. *Id.* However, in cases where the postjudgment court did not preside over the trial, we review its findings of fact *de novo*. *See* **State v. Herfel**, 49 Wis. 2d 513, 521, 182 N.W.2d 232 (1971). Furthermore, "[t]he ultimate determination of whether counsel's performance was deficient and prejudicial to the defense are questions of law" which this court also reviews independently. **Johnson**, 153 Wis. 2d at 128.

¶21  The issue of whether N.M.A.-S.'s trial counsel was ineffective for failing to strike Juror 8 comes down to whether that juror demonstrated subjective bias. "The United States and Wisconsin Constitutions guarantee a criminal defendant the right to a trial by an impartial jury." **State v. Oswald**, 2000 WI App 2, ¶16, 232 Wis. 2d 62, 606 N.W.2d 207. A juror who "has expressed or formed any opinion or is aware of any bias or prejudice in the case" is deemed to be subjectively biased, and should be removed from the panel. **State v. Faucher**, 227 Wis. 2d 700, 715-17, 596 N.W.2d 770 (1999) (citing WIS. STAT. § 805.08(1)). However, "[p]rospective jurors are presumed impartial, and the challenger to that presumption bears the burden of proving bias." **State v. Gesch**, 167 Wis. 2d 660, 666, 482 N.W.2d 99 (1992) (citation omitted).

¶22  Our supreme court has explained that "subjective bias" is the type of bias "that is revealed through the words and the demeanor of the prospective juror." **Faucher**, 227 Wis. 2d at 717. Indeed, "subjective bias refers to the bias that is revealed by the prospective juror on *voir dire*: it refers to the prospective juror's state of mind." **Id.** For example, a prospective juror is subjectively biased "if the record reflects that the juror is not a reasonable person who is sincerely willing to set aside any opinion or prior knowledge that the prospective juror might have." **Oswald**, 232 Wis. 2d 62, ¶19. However, a prospective juror "need

not respond to *voir dire* questions with unequivocal declarations of impartiality." *State v. Erickson*, 227 Wis. 2d 758, 776, 596 N.W.2d 749 (1999). In fact, the purpose of *voir dire* is "to explore a prospective juror's fears, biases, and predilections," and the trial court should "fully expect a juror's honest answers at times to be less than unequivocal." *Id.*

¶23 Here, the issue with Juror 8 arose when N.M.A.-S.'s trial counsel asked the jury pool whether they thought that someone struggling with addiction was an unfit parent. Juror 8—along with ten other prospective jurors—raised their hands indicating their agreement with that statement. Counsel individually questioned those who had raised their hands about their opinions, with Juror 8 expressing concern about the parenting capabilities of people with addiction. Counsel also followed up the questions to each of those jurors with a specific question as to whether the juror could give N.M.A.-S. a "fair shot"; that is, be impartial. There is no verbal response to this question from Juror 8 in the record. Based on this exchange, N.M.A.-S. asserts that trial counsel was ineffective for failing to challenge Juror 8.

¶24 After *voir dire*, there was no further discussion among the trial court and the parties regarding Juror 8; N.M.A.-S. contends that trial counsel likely forgot to raise a challenge for Juror 8. Indeed, the parties and the court discussed the responses of several—but not all—of the other jurors who had raised their hands. Those who had responded with clear indications of an inability to be impartial were struck for cause. For example, Juror 6, who had a father who was an addict, had expressed shock over A.A.S. ingesting an opiate and stated that she could not be fair. Juror 14 had responded that addiction has "such a grasp on a person" that it would "win out" in a choice between drugs and the child, and that she could "[p]robably not" be fair. Juror 25 stated that she was "appalled" and

10

"disgusted" and would not be able to fairly consider N.M.A.-S.'s position. Juror 28 indicated that he "already ha[d] a very negative view" of N.M.A.-S. All four were struck for cause.

¶25 However, in addition to Juror 8's response, the responses of three other jurors who had raised their hands were not discussed. In particular, Juror 20, who was also empaneled on the jury but later struck as an alternate, expressed strong feelings about "tak[ing] care of yourself before taking care of your children" and admitted to possibly being biased against N.M.A.-S. based on those feelings. Additionally, in response to the inquiry about impartiality, Juror 20 stated "I can try."

¶26 "[A] subjective inquiry will often not be susceptible to direct proof." *Faucher*, 227 Wis. 2d at 717-18. Thus, the determination of whether a juror is subjectively biased "turns on his or her responses on *voir dire* and a [trial] court's assessment of the individual's honesty and credibility, among other relevant factors." *Id.* at 718. In this case, the postjudgment court had not been in a position to assess Juror 8's demeanor, honesty, and credibility during *voir dire*, since it did not preside over the jury trial; rather, for these purposes, it was N.M.A.-S.'s trial counsel who was in a "superior position" to make those assessments. *See State v. Tobatto*, 2016 WI App 28, ¶25, 368 Wis. 2d 300, 878 N.W.2d 701.

¶27 To that end, N.M.A.-S.'s trial counsel implicitly concluded that Juror 8 had not displayed subjective bias. Given trial counsel's testimony that she would not have moved on to question the next juror if there had been no response or some kind of negative signal from Juror 8, it is reasonable to conclude that Juror 8 indicated affirmatively—albeit non-verbally—that he or she could be

impartial.  Furthermore, the record indicates that the parties' discussion about striking jurors was focused on those jurors who had given responses that demonstrated a more definitive inability to be impartial.  In sum, rather than showing that trial counsel "forgot" about Juror 8, the record supports the conclusion that based on Juror 8's "honest answers," counsel made a determination about Juror 8's ability to be impartial that was appropriately based on her assessment of Juror 8's demeanor, honesty, and credibility during *voir dire*. *See* **Erickson**, 227 Wis. 2d at 776; **Faucher**, 227 Wis. 2d at 718.

¶28    With regard to trial counsel's failure to use a peremptory strike on Juror 8, counsel explained that, with significant input from N.M.A.-S., they had exercised all of their allotted peremptory strikes on other jurors that they "dislike[d]" more than Juror 8.  "[A] deliberate choice of strategy, even if it back fires, amounts to a waiver binding upon the defendant and this court."  **State v. McDonald**, 50 Wis. 2d 534, 538, 184 N.W.2d 886 (1971).  N.M.A.-S. effectively waived this argument by participating in the choice of which jurors upon which to exercise peremptory strikes.

¶29    Furthermore, this argument also fails on the merits.  "Counsel's decisions in choosing a trial strategy are to be given great deference," and will generally be sustained "if reasonable, given the strong presumption of effective assistance and deference to strategic decisions."  **Balliette**, 336 Wis. 2d 358, ¶26. We conclude that trial counsel's strategy with regard to exercising peremptory

strikes was reasonable. For all of these reasons, we disagree with the postjudgment court that trial counsel's actions with regard to Juror 8 were deficient.[9]

¶30     Moreover, even if trial counsel's actions could be deemed to be deficient, we agree with the postjudgment court that N.M.A.-S. failed to demonstrate that she was prejudiced.  Given that demonstrating prejudice requires that there is a "substantial, not just conceivable, likelihood of a different result," *see Starks*, 349 Wis. 2d 274, ¶55 (citation omitted), a simple means of assessing the result is to review the verdict reached by the jury.

¶31     Because this is a civil case, the verdict is sufficient if ten or more jurors are in agreement. *See* WIS JI—CIVIL 180.  The special verdict form in this case indicates that only one juror dissented to one of the questions:  whether DMCPS had made a "reasonable effort" to provide services to N.M.A.-S., as required by the court.  Thus, even if a different prospective juror had been chosen instead of Juror 8, and that juror had also dissented, the verdict against N.M.A.-S. would still stand.  As a result, there is not a substantial likelihood that there would have been a different result in this case.

¶32     Therefore, N.M.A.-S.'s ineffective assistance of counsel claim fails. Accordingly, we affirm the orders terminating N.M.A.-S.'s parental rights to both A.A.S. and A.J.S.

        *By the Court.*—Orders affirmed.

---

[9] "[W]e will affirm the trial court if the court reached the correct result, even if we employ different reasoning[.]" **State v. Thames**, 2005 WI App 101, ¶10, 281 Wis. 2d 772, 700 N.W.2d 285.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.