COURT OF APPEALS
DECISION
DATED AND FILED

**January 18, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP608-CR**

Cir. Ct. No. 2019CF690

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

MARRIS STEVEN VIRGIL, JR.,

DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Milwaukee County: DAVID L. BOROWSKI, Judge. *Reversed.*

Before Donald, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  The State appeals a postconviction order granting Marris Steven Virgil, Jr., a new trial.  The State contends that Virgil has failed to show that a biased juror was seated for trial, and as a result, Virgil has failed to prove that he was deprived of effective assistance of counsel entitling him to a new trial.  For the reasons discussed below, we agree with the State and therefore reverse the order granting Virgil a new trial.

## BACKGROUND

¶2     On October 11, 2018, around 11:00 p.m., two police officers observed a Nissan Altima with illegally tinted windows and no front license plate.  The officers activated their emergency lights and squad siren and attempted to stop the car.  The car sped away at approximately seventy miles-per-hour in a twenty-five miles-per-hour residential zone.

¶3     The officers pursued the car for approximately seven tenths of a mile.  The car eventually turned into an alleyway, where the car struck a rolled-up carpet causing it to become disabled.  While the car was still in motion, the driver exited and fled by foot.  One of the officers chased the driver on foot and ordered him to stop multiple times, but was unable to apprehend him.

¶4     Inside the Nissan, officers found Milwaukee Enrollment Services documents with Virgil's name, two cell phones, a baggie of suspected heroin, and a digital scale.  A baggie of suspected marijuana was also found in the driver's flight path away from the car.  At the police station, the officer who pursued the driver on foot viewed a booking photo of Virgil and identified him as the man he saw running.

¶5     Virgil proceeded to trial on three charges: possession with intent to deliver heroin; fleeing or eluding an officer; and felony bail jumping.

¶6     Relevant to this appeal, during voir dire, the jurors were asked whether they had been "personally affected by someone in either this community or a different community as a result of a bad fleeing or eluding-an-officer type situation." Juror 3 answered that "I have—my wife has friends that have passed from people fleeing or speeding and things of that nature, and we've been close to encounters from people fleeing." Juror 3 further explained that, "We were driving to a Home Depot and some guy ran a red light. And we stopped aggressively, scraped our front bumper pretty badly. And [my wife] got a little bit—not whiplash, but she got scared."

¶7     The following exchange then took place between defense counsel and Juror 3:

> Defense counsel: Would that affect your ability here today, just by knowing that that is one of the charges here, to be fair and impartial?
>
> Juror 3: No. I would like to say no. But as people have said before, it's a little tough.
>
> Defense counsel: It would be difficult?
>
> Juror 3: Yes.

Neither the State, nor defense counsel moved to strike Juror 3 for cause, and Juror 3 was impaneled on the jury.[1]

---

[1] The circuit court struck five other jurors for cause—four jurors at the request of the State and one juror at the request of the defense.

¶8 During the trial, the defense argued that Virgil was misidentified as the driver of the Nissan. The jury returned guilty verdicts on all three counts. The circuit court asked the jurors "were these and are these your verdicts?" One of the jurors answered, "I was on the fence of not guilty." The court ended the polling, and sent the jurors back to continue deliberations.

¶9 The following day, the jurors sent the circuit court a message indicating that "we believe we are at an impasse at this point. We do not feel we can come to a unanimous decision. Please provide guidance." The circuit court provided a supplemental instruction to the jurors which stated in pertinent part that the jurors are competent to decide the case, that they are "not going to be made to agree, nor … be kept out until [they] do agree," and that they should "make an honest and sincere attempt" to arrive at a verdict. The jury continued to deliberate. Subsequently, the jury returned guilty verdicts on all three counts.[2] The court polled the jury and each juror affirmed the verdicts.

¶10 Virgil filed a postconviction motion alleging that Juror 3 was subjectively and objectively biased, and that his trial counsel was ineffective for failing to move to strike Juror 3 for cause.

¶11 After additional briefing, an evidentiary *Machner* hearing was held.[3] Virgil's trial counsel testified that after hearing Juror 3's answers, he intended to move to strike Juror 3 for cause, and it was an oversight that he did not do so. On cross-examination, however, he testified that Juror 3 did not give him any

---

[2] During deliberations, the defense requested a mistrial twice, which the circuit court denied.

[3] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

indication that he could not be fair and impartial. Trial counsel also acknowledged that other prospective jurors concerned him "a little bit more" and Juror 3 was a Hispanic male and he "thought it would be beneficial to have a more diverse panel for Mr. Virgil."

¶12    The circuit court granted Virgil's postconviction motion for a new trial. The court indicated that its "normal procedure" for strikes for cause is "pretty lenient" and "[i]f either side asks for somebody to be struck for cause, unless it's way off base, I usually strike that person for cause." The court observed that "most jurors generally want to be favorable in their appearance to the court" and are reluctant to say "no[] way I could possibly be fair in this case or, of course, I think the defendant's guilty or anything like that."

¶13    The circuit court then went on to state that Juror 3 "probably should have been struck" and "[h]ad somebody raised it, I'm sure I would have struck him[.]" The court stated that "[a]nyone … in a case where you're charged with fleeing and drug possession and bail jumping, a juror who had a lifetime experience with that situation, normally doesn't end up on the jury." However, the court noted that there were certain exceptions, such as an instance where a juror was involved in a sexual assault case ten or fifteen years ago, and the juror believed he or she could "put that aside and be fair and impartial, so they might end up on a sexual assault case."

¶14    The court next stated that "[i]t's very hard to discuss prejudice or bias because who knows." The court indicated that it was not present in the jury room during deliberations and that it did not remember talking to the jury after the trial, or anything related to Juror 3. The court then repeated that it would have struck Juror 3 and it was an oversight for trial counsel, the State, and "maybe

even" the court not to take action. The circuit court, however, stated that "I can't say for sure that [Juror 3] was biased." The court stated that:

> He may have been completely fair and impartial in his deliberations, but having had a family experience as significant as what he indicated and him being what I would say somewhat equivocal in his answers as to where he could be fair and impartial, whether he'd be fair and impartial, I think the defense has met their burden.

The State now appeals.

## DISCUSSION

¶15    On appeal, the State contends that the circuit court erroneously granted a new trial. We agree. We conclude that Juror 3 was not biased, and as a result, Virgil's trial attorney was not ineffective.

¶16    The right to an impartial jury is guaranteed by the United States and Wisconsin Constitutions. *See* ***State v. Kettner***, 2011 WI App 142, ¶12, 337 Wis. 2d 461, 805 N.W.2d 132; U.S. CONST. amend. VI; WIS. CONST. art. I, § 7. "Prospective jurors are presumed impartial," and it is the defendant's burden to rebut this presumption. ***State v. Gutierrez***, 2020 WI 52, ¶39, 391 Wis. 2d 799, 943 N.W.2d 870 (citation omitted).

¶17    The Wisconsin Supreme Court has recognized three types of bias: (1) statutory bias; (2) subjective bias; and (3) objective bias. ***State v. Lepsch***, 2017 WI 27, ¶22, 374 Wis. 2d 98, 892 N.W.2d 682. At issue in this case is whether Juror 3 was subjectively or objectively biased. The circuit court found

6

that "I can't say for sure that [Juror 3] was biased."[4]  Below, we first address whether Juror 3 was subjectively or objectively biased.  We then turn to whether trial counsel was ineffective.

### A. Juror Bias

#### 1. Subjective Bias

¶18    Subjective bias turns on "the words and the demeanor of the prospective juror" and "refers to the prospective juror's state of mind."  *State v. Faucher*, 227 Wis. 2d 700, 717, 596 N.W.2d 770 (1999).  In considering whether a prospective juror was subjectively biased, we examine "whether the record reflects that the juror is a reasonable person who is sincerely willing to set aside any opinion or prior knowledge" he or she might have.  *State v. Kiernan*, 227 Wis. 2d 736, 745, 596 N.W.2d 760 (1999).  We generally will uphold a circuit court's factual finding that a prospective juror is or is not subjectively biased unless it is clearly erroneous.  *State v. Lindell*, 2001 WI 108, ¶36, 245 Wis. 2d 689, 629 N.W.2d 223.

¶19    Here, Juror 3's responses on the record do not demonstrate subjective bias.  Two cases—*State v. Carter*, 2002 WI App 55, 250 Wis. 2d 851, 641 N.W.2d 517, and *Gutierrez*, 391 Wis. 2d 799—support this conclusion.

¶20    In *Carter*, the defendant was convicted of second-degree sexual assault.  *Id.*, 250 Wis. 2d 851, ¶1.  During voir dire, a prospective juror indicated

---

[4] In his brief, Virgil asserts that the circuit court's decision "looks as though it is based on objective bias."  We reject this argument.  As noted above, the circuit court clearly stated on the record that "I can't say for sure that [Juror 3] was biased."

to the court that his brother-in-law had been sexually assaulted. *Id.*, ¶3. The State asked the prospective juror whether this would influence or affect his ability to be fair and impartial. *Id.* The prospective juror responded, "Yes." *Id.* The prospective juror ultimately served on the panel that convicted the defendant. *Id.*, ¶4. This court concluded that the juror's response demonstrated "unequivocally" that he was subjectively biased. *Id.*, ¶8.

¶21 Subsequently, in *Gutierrez*, which was a sexual assault of a child case, the defense attorney asked during jury selection whether any prospective juror felt that they could not be fair and impartial given the nature of the charges. *See id.*, 391 Wis. 2d 799, ¶¶7, 11. One of the prospective jurors responded that "'I don't know if I could be impartial. I work with kids. I drive [a] school bus, so I deal with kids all the time, and I just, I don't know if I can be impartial.'" *Id.*, ¶11. The defense attorney moved to strike the juror for cause, but the State objected arguing that there needed to be a "'little more certainty.'" *Id.* The circuit court never ruled on the motion, and the juror served on the defendant's jury. *Id.*

¶22 On appeal, the defendant in *Gutierrez* argued that the juror was subjectively biased. *Id.*, ¶40. Our supreme court held that there was no error. *Id.*, ¶42. The court distinguished the juror's uncertainty in the case with the juror's "definitive 'yes'" in *Carter*. *Gutierrez*, 391 Wis. 2d 799, ¶41. The court stated that "[w]e accept and tolerate that a prospective juror may honestly equivocate in response to voir dire questions exploring their fears, biases, and predilections." *Id.*

¶23 In this case, when Juror 3 was asked whether his ability to be fair and impartial would be impacted, he did not definitively say "yes" as in *Carter*. *See id.*, 250 Wis. 2d 851, ¶¶3, 8. Rather, Juror 3 stated, "No. I would like to say no. But as people have said before, it's a little tough" and it "would be difficult."

8

This equivocal response is much more akin to *Gutierrez* where the juror stated, "I don't know if I could be impartial." *See id.*, 391 Wis. 2d 799, ¶¶40-42. Thus, we are not persuaded that the circuit court's finding that Juror 3 was not subjectively biased is clearly erroneous. *Lindell*, 245 Wis. 2d 689, ¶36. "[A] prospective juror need not respond to voir dire questions with unequivocal declarations of impartiality." *State v. Erickson*, 227 Wis. 2d 758, 776, 596 N.W.2d 749 (1999).

### 2. Objective Bias

¶24 A juror is objectively biased if "a reasonable person" in the prospective juror's position could not set aside his or her "opinion or prior knowledge." *Faucher*, 227 Wis. 2d at 718-19. "[T]he focus of the inquiry into 'objective bias' is not upon the individual prospective juror's state of mind, but rather upon whether the reasonable person in the individual prospective juror's position could be impartial." *Id.* at 718.

¶25 Objective bias presents a mixed question of fact and law. *Id.* at 720. "[A] circuit court's findings regarding the facts and circumstances surrounding voir dire and the case will be upheld unless they are clearly erroneous." *Id.* (emphasis omitted). "Whether those facts fulfill the legal standard of objective bias is a question of law." *Id.* "Although we do not defer to a circuit court's decision on a question of law, where the factual and legal determinations are intertwined as they are in determining objective bias, we give weight to the circuit court's legal conclusion." *State v. Funk*, 2011 WI 62, ¶30, 335 Wis. 2d 369, 799 N.W.2d 421. Thus, an appellate court will only overturn a circuit court's finding of objective bias if as a matter of law, no reasonable judge could have reached the same conclusion. *See id.*; *Faucher*, 227 Wis. 2d at 721.

9

¶26 Virgil contends that Juror 3 was objectively biased because a person with Juror 3's experiences could not be impartial in a case involving a fleeing driver. Virgil points out that Juror 3 said that his wife had friends who had died "from people fleeing or speeding and things of that nature[.]" Additionally, he and his wife were involved in a situation where "some guy ran a red light" and they had to stop "aggressively" and scraped their front bumper "pretty badly" and his wife "got scared."

¶27 We disagree with Virgil. In *Funk*, a sexual assault of a child case, the defendant argued that one of the jurors was biased based on her previous experiences as a victim of sexual assault. *Id.*, 335 Wis. 2d 369, ¶¶3, 42. Our supreme court held that the defendant had failed to prove that a "reasonable juror in [the juror's] position could not be impartial." *Id.*, ¶63. The court stated that "[w]ithout such proof, the only basis on which we could conclude that she was objectively biased is to conclude she was per se biased[.]" *Id.* The court then stated that case law "forbids such a per se bias rule based solely on having been the victim of sexual assault." *Id.* If a per se rule that a sexual assault victim is objectively biased is prohibited in a sexual assault case, it makes sense that a per se rule that a victim of a fleeing incident was objectively biased would also be prohibited.

¶28 Moreover, as the State observes, no reasonable juror with Juror 3's experiences would be biased against Virgil. There is no indication that Virgil injured anyone when fleeing. Additionally, and most significantly, the main issue in this case was not whether the driver of the Nissan fled from the police or if fleeing was "bad" behavior, but a question of identity—whether the police correctly identified Virgil as the driver. Thus, we are satisfied that a reasonable

10

judge could reach the conclusion reached by the judge here—that Juror 3 was not objectively biased. *See id.*, ¶30; *Faucher*, 227 Wis. 2d at 721.

### B. Ineffective Assistance of Counsel

¶29    Finally, we address whether Virgil's trial attorney was ineffective. To establish ineffective assistance of counsel, a defendant must demonstrate that his lawyer performed deficiently and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Whether trial counsel has provided ineffective assistance of counsel is a mixed question of fact and law. *State v. Tobatto*, 2016 WI App 28, ¶13, 368 Wis. 2d 300, 878 N.W.2d 701. A reviewing court will uphold the circuit court's factual findings unless they are clearly erroneous, but determine *de novo* whether counsel was ineffective. *Id.*

¶30    Here, the circuit court found that Virgil's attorney was ineffective because if his attorney had moved to strike Juror 3, the circuit court would have granted the motion. This is not the correct standard. While it is true that circuit courts are encouraged to liberally strike prospective jurors for cause during voir dire, *see Lindell*, 245 Wis. 2d 689, ¶49, a different standard applies after conviction. To obtain relief after a conviction, a defendant must prove that a biased juror was seated. *See Funk*, 335 Wis. 2d 369, ¶32; *Gutierrez*, 391 Wis. 2d 799, ¶45.

¶31    Applying the correct standard here, Virgil is not entitled to a new trial. As discussed above, Virgil has failed to establish that Juror 3 was subjectively or objectively biased. Thus, trial counsel cannot be ineffective for failing to remove Juror 3 from the panel. *See Gutierrez*, 391 Wis. 2d 799, ¶45; *Tobatto*, 368 Wis. 2d 300, ¶22. Accordingly, we conclude that the circuit court erred in granting Virgil's motion for a new trial, and we reverse.

*By the Court.*—Order reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).